# STATE OF MINNESOTA

# IN SUPREME COURT

## A23-1354

| | |
|---|---|
| Original Jurisdiction | Per Curiam |
| | Took no part, Chutich, Procaccini, JJ. |
| Joan Growe, et al., | |
| Petitioners, | |
| vs. | Filed: February 7, 2024 |
| | Office of Appellate Courts |
| Steve Simon, Minnesota Secretary of State, | |
| Respondent. | |

_____

Charles N. Nauen, David J. Zoll, Kristen G. Marttila, Rachel A. Kitze Collins, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota; and

Ronald Fein, Amira Mattar, Courtney Hostetler, John Bonifaz, Ben Clements, Free Speech for People, Newton, Massachusetts, for petitioners.

Keith Ellison, Attorney General, Nathan J. Hartshorn, Allen Cook Barr, Assistant Attorneys General, Saint Paul, Minnesota, for respondent Steve Simon, Minnesota Secretary of State.

R. Reid LeBeau II, Jacobson, Magnuson, Anderson & Halloran, P.C., Saint Paul, Minnesota, for intervenor-respondent Republican Party of Minnesota.

Nicholas J. Nelson, Samuel W. Diehl, CrossCastle PLLC, Minneapolis, Minnesota;

David A. Warrington, Dhillon Law Group, Inc., Alexandria, Virginia; and

Mark P. Meuser, Christopher M. Halbohn, Dhillon Law Group, Inc., San Francisco, California, for Donald J. Trump and amicus curiae Donald J. Trump for President 2024, Inc.

1

Douglas G. Wardlow, Chaska, Minnesota, for amicus curiae The American Center for Law and Justice.

Sara K. Van Norman, Van Norman Law, PLLC, Minneapolis, Minnesota, for amicus curiae Citizens for Responsibility and Ethics in Washington.

Katherine M. Swenson, Emily M. McAdam, Greene Espel PLLP, Minneapolis, Minnesota, for amicus curiae Constitutional Accountability Center.

Daniel E. Gustafson, Karla M. Gluek, Gustafson Gluek PLLC, Minneapolis, Minnesota, for amicus curiae Gerard N. Magliocca.

Charles R. Shreffler, Dakota Law PLLC, Lakeville, Minnesota, for amicus curiae Professor Derek T. Muller.

Patrick N. Strawbridge, Consovoy McCarthy PLLC, Boston, Massachusetts;

Gilbert C. Dickey, Jeffrey S. Hetzel, Consovoy McCarthy PLLC, Arlington, Virginia; and

Gregory M. Erickson, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota, for amici curiae Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee.

————————————————

S Y L L A B U S

1.      Petitioners have standing to file a petition asserting that it would be error for the Secretary of State to place former President Donald J. Trump's name on the 2024 presidential ballots.  But only their claim regarding the 2024 Republican Party presidential nomination primary ballot—not their claim regarding the 2024 general election ballot—is ripe and about to occur or has already occurred under Minn. Stat. § 204B.44(a) (2022) and is thus justiciable at this time.

2.      It is not an error under Minn. Stat. § 204B.44 (2022), for the Secretary of State to place former President Donald J. Trump's name on the 2024 Republican Party

2

presidential nomination primary ballot because the Legislature established the presidential nomination primary as an internal party election to serve an internal party purpose of selecting delegates to the party's national convention.

Petition dismissed with prejudice as it relates to the placement of former President Donald J. Trump's name on the presidential nomination primary ballot. Petition dismissed without prejudice as it relates to the placement of former President Donald J. Trump's name on the general election ballot.

O P I N I O N

PER CURIAM.

On September 12, 2023, multiple Minnesota voters filed a "Petition Pursuant to Minn. Stat § 204B.44 to Challenge Placement of Donald J. Trump on the 2024 Primary and General Election Ballots" (the Petition).[1] Each petitioner intends to vote in both the presidential nomination primary and general election in 2024, including at least one petitioner who intends to vote in the Republican Party presidential nomination primary.[2] The Petition invokes Minn. Stat. § 204B.44 (2022) as the vehicle for seeking an order prohibiting Secretary of State Steve Simon from including former President Donald J. Trump as a candidate on the 2024 Republican Party presidential nomination primary ballot and the general election ballot due to the events of January 6, 2021, at the United States

---

[1]     The petitioners are Joan Growe, Paul Anderson, Thomas Beer, David Fisher, Vernae Hasbargen, David Thul, Thomas Welna, and Ellen Young.

[2]     The presidential nomination primary is established and governed by Minn. Stat. ch. 207A (2022).

Capitol. Petitioners' legal theory is rooted exclusively in the claim that Section 3 of the Fourteenth Amendment to the United States Constitution renders former President Trump ineligible to hold office.

On November 8, 2023, we issued an order concluding that petitioners have standing and that their claim was ripe as to the issue of whether former President Trump's name should be excluded from the 2024 Republican Party presidential nomination primary ballot but holding that their claim as to the 2024 general election ballot was neither ripe nor "about to occur" as section 204B.44(a) requires. We further concluded, with respect to the only ripe issue before us, that under section 204B.44, there was no error to correct as to the presidential nomination primary election if former President Trump's name was included on the presidential nomination primary ballot, notwithstanding petitioners' claim that former President Trump is disqualified from holding office under Section 3 of the Fourteenth Amendment. Our opinion here explains the reasons for our decision.

## FACTS

Petitioners claim that, under Section 3 of the Fourteenth Amendment to the United States Constitution, former President Trump cannot hold the office of President of the United States. They claim that former President Trump, in conduct related to the events of January 6, 2021, at the United States Capitol, "engaged in insurrection or rebellion" against the United States or gave "aid or comfort to the enemies thereof," within the meaning of

4

Section 3 of the Fourteenth Amendment. Section 3 of the Fourteenth Amendment provides in full:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3.

Petitioners further assert that an organization, Free Speech For People, sent a letter to the Secretary of State on August 23, 2023, requesting that the Secretary of State exclude former President Trump from the 2024 presidential nomination primary and general election ballots. According to petitioners, the Secretary of State responded by letter, stating that he did not have the authority to investigate a candidate's ineligibility but that Minn. Stat. § 204B.44 allows one or more people to challenge in court the eligibility of a candidate to appear on a ballot. *See* Minn. Stat. § 204B.44 (providing procedures to petition this court to correct certain ballot errors). On September 7, 2023, the Secretary of State issued a public statement repeating his claim that his office "does not have the legal authority to investigate a candidate's eligibility for office" and that "Minnesota law (Minn. Stat. § 204B.44) allows one or more people to challenge in court the eligibility of a candidate to appear on a ballot."

Later that month, petitioners filed the Petition against the Secretary of State. In an order filed on September 20, 2023, we granted the motion of the Republican Party of

5

Minnesota to intervene as a respondent in this action. We further directed petitioners, the Secretary of State, and the Republican Party of Minnesota to file briefs on threshold legal issues of justiciability and the legal construction of Section 3 of the Fourteenth Amendment. In addition, we invited former President Trump to file a response to the Petition and a responsive brief addressing the same legal issues. After briefs were filed, we held oral argument on November 2, 2023.

On November 8, 2023, we issued an order dismissing the Petition. *Growe v. Simon*, 997 N.W.2d 81 (Minn. 2023) (order). After concluding that petitioners had standing to file a petition under section 204B.44 and their claim regarding the presidential nomination primary ballot was justiciable, we held that it would not be an error for the Secretary of State to include former President Trump's name on the presidential nomination primary ballot. 997 N.W.2d at 82. We stated:

> The Legislature enacted the presidential nomination primary process to allow major political parties to select delegates to the national conventions of those parties; at those conventions the selected delegates will cast votes along with delegates from all of the other states and territories and choose a presidential candidate who will subsequently appear on general election ballots. *See* Minn. Stat. § 207A.11(d) (2022) (explaining that the presidential nomination primary "only applies to a major political party that selects delegates at the presidential nomination primary to send to a national convention"). This is "a process that allows political parties to obtain voter input in advance of a nomination decision made at a national convention." *De La Fuente v. Simon*, 940 N.W.2d 477, 492 (Minn. 2020). Thus, although the Secretary of State and other election officials administer the mechanics of the election, this is an internal party election to serve internal party purposes, and winning the presidential nomination primary does not place the person on the general election ballot as a candidate for President of the United States. As we explained in *De La Fuente*, in upholding the constitutionality of this statutory scheme for the presidential nomination primary, "[t]he road for any candidate's access to the ballot for Minnesota's presidential nomination primary runs only through the participating political parties, who alone

6

> determine which candidates will be on the party's ballot." 940 N.W.2d at
> 494–95. And there is no state statute that prohibits a major political party
> from placing on the presidential nomination primary ballot, or sending
> delegates to the national convention supporting, a candidate who is ineligible
> to hold office.

*Id.* at 82–83 (alteration in original).

We also concluded that petitioners' claim that it would be an error under section 204B.44 for the Secretary of State to include former President Trump's name on the 2024 general election ballot was not ripe and so not justiciable. *Growe*, 997 N.W.2d at 82. Therefore, we dismissed the Petition as it related to the 2024 general election ballot without prejudice as to petitioners bringing a new petition raising their claim as to the general election. *Id.* at 83. This opinion sets forth in more detail our reasoning as summarized in our order dated November 8, 2023.

## ANALYSIS

As described above, petitioners claim that Section 3 of the Fourteenth Amendment bars former President Trump from holding the office of President of the United States. Petitioners further assert that because former President Trump is ineligible to hold the office of President of the United States, his name cannot appear on the 2024 Republican Party presidential nomination primary ballot or on the 2024 general election ballot as a candidate for president.

Minnesota Statutes section 204B.44 provides the statutory framework for individuals to seek a court order directing an election official like the Secretary of State to correct an error or omission that has occurred or is about to occur in the conduct of an election. One of the errors that we may order the Secretary of State to correct is the

7

improper placement of a candidate's name on an official ballot. Minn. Stat. § 204B.44(a)(1).

To properly assess petitioners' claims that it would be an error for the Secretary of State to place former President Trump's name on the Republican Party presidential nomination primary ballot and on the general election ballot, it is important to understand the statutory processes that the Legislature adopted for placing the names of the party candidates for president and vice president on the ballots and for choosing presidential electors and alternate electors. We focus particularly on the process that applies to major political parties, like the Republican Party, which select delegates "to send to a national convention." Minn. Stat. § 207A.11(d) (2022); *see* Minn. Stat. § 204B.07, subd. 2 (2022) (providing that the general nominating petition process "does not apply to candidates for presidential elector or alternate nominated by major political parties" because "[m]ajor party candidates for presidential elector or alternate are certified under section 208.03").

*Presidential Nomination Primary Ballot*

In 2016, the Minnesota Legislature established, in a separate statutory chapter, a presidential nomination primary process. Act of May 22, 2016, ch. 162, §§ 9–15, 2016 Minn. Laws 605, 609–12 (codified as amended at Minn. Stat. ch. 207A (2022)). The purpose of the chapter is to establish the process for selecting delegates to a major political party's national convention at which the party's nominee for president will be chosen; "[t]he results of the presidential nomination primary must bind the election of delegates in each party." Minn. Stat. § 207A.12(d); *see De La Fuente v. Simon*, 940 N.W.2d 477, 488–89 (Minn. 2020) (stating that "[p]olitical parties that use a national convention to nominate

8

a candidate for president may also use state presidential primaries to gather voter input for the decision to be made at the national convention: the national party's candidate for a general-election ballot").

Consistent with that purpose, the Legislature created a presidential nomination primary structure to facilitate the internal process of major parties for selecting their candidates, a structure in which the Secretary of State's role is limited and closely prescribed. The Legislature directed that "[e]ach party participating in the presidential nomination primary must determine which candidates are to be placed on the presidential nomination primary ballot for that party." Minn. Stat. § 207A.13, subd. 2(a). The Legislature stated that "[o]nce submitted, changes must not be made to the candidates that will appear on the ballot." *Id*. The chair of each political party also must designate "the names of write-in candidates, if any, to be counted for that party" in determining who the Minnesota delegation will support at the national convention. Minn. Stat. § 207A.13, subd. 2(b).

Each person wishing to vote in the presidential nomination primary must request a ballot for a specific party after confirming to the election judge that the person is "in general agreement with the principles of the party for whose candidate I intend to vote." Minn. Stat. § 204C.10(b) (2022) (requiring that the "general agreement" language appear on the polling place roster); Minn. R. 8215.0300, subp. 2 (2023) (requiring primary voters to read the roster language). "A voter who refuses to indicate a major political party must not be allowed to sign the polling place roster or cast a ballot." Minn. R. 8215.0300, subp. 3 (2023). Further, Minnesota Rule 8215.0300 states:

9

The polling place roster must include a place for the voter to indicate the voter's party choice. The election judge or voter must record in the polling place roster or electronic roster the name of the major political party whose ballot the voter requested. After the voter's major political party choice has been recorded, the election judge shall instruct the voter to sign the polling place roster. The county auditor must include the major political party choice recorded on the roster when posting voting history for every person who voted in the presidential nomination primary in the statewide registration system.

Minn. R. 8215.0300, subp. 2.

Moreover, the Legislature mandated that the Secretary of State "consult with the party chairs" when making rules for the presidential nomination primary, "including seeking advice about possible rules before issuing a notice of intent to adopt rules, consultation before the notice of comment is published, consultation on the statement of need and reasonableness, consultation in drafting and revising the rules, and consultation regarding any modifications to the rule being considered." Minn. Stat. § 207A.11(c). In short, the presidential nomination primary is an internal party election designed to serve internal party purposes; the Secretary of State merely implements the party election.[3] As

---

[3] We explained the history of Minnesota's presidential nomination primary process in *De La Fuente*:

"Before 2020, Minnesota last held a presidential nominating primary in 1992. At that time, a candidate's name was listed 'on the appropriate major political party presidential ballot' if the person (1) filed an affidavit of candidacy and paid a filing fee, or (2) was nominated by a petition. Minn. Stat. § 207A.02, subd. 1 (1992). In other years, Minnesota voters indicated 'their preference for the offices of president of the United States' at statewide caucuses. Minn. Stat. § 202A.18, subd. 2a (2000); *see also* Minn. Stat. § 202A.14, subd. 1 (2018) (requiring 'a party caucus' to be held in 'every state general election year'). When a caucus was held in presidential election years, candidates for president and vice-president did not 'file an affidavit of candidacy for office.' Minn. Stat. § 204B.06, subd. 4 (2018)."

940 N.W.2d at 482.

10

we explained in *De La Fuente*, where we upheld the constitutionality of this statutory scheme for the presidential nomination primary, "[t]he road for any candidate's access to the ballot for Minnesota's presidential nomination primary runs only through the participating political parties, who alone determine which candidates will be on the party's ballot."  940 N.W.2d at 494–95.

*General Election Ballot*

The process for placing a major political party candidate for president (as a stand-in for the Minnesota electors and alternate electors who will actually vote for president[4]) on the general election ballot also differs from the process for placing other candidates on the general election ballot.  That process is set forth in a separate chapter of the Minnesota Statutes, Minn. Stat. ch. 208 (2022).  Following national conventions at which the major political parties select their nominees for president, the major political party chairs certify to the Secretary of State the names of the persons nominated as the presidential electors and alternate presidential electors, as well as the names of the party candidates for president and vice president.  Minn. Stat. § 208.03.  The person the major party places on the general election ballot for president is not necessarily the same person that prevailed in the Minnesota presidential nomination primary.[5]  In the general election, "a vote cast for the

---

[4]      Under the United States Constitution, the people do not directly elect the president or vice president.  Rather, each state chooses electors to cast votes in what has come to be known as the electoral college.  *See* U.S. Const. art. II, § 1; *id.* amend. XII.

[5]      This process contrasts with the more typical primary election process set forth in Minnesota Statutes chapter 204B (2022), for other offices in which major political party candidates for partisan office and candidates for nonpartisan office apply for a place on the primary ballot by filing an affidavit of candidacy.  Minn. Stat. § 204B.03 ("Candidates of

party candidates for president and vice president shall be deemed a vote for that party's electors and alternates as filed with the secretary of state." Minn. Stat. § 208.04. The electors for the prevailing party candidates meet after the election to cast electoral votes for the offices of president and vice president. Minn. Stat. §§ 208.05, 208.46.

## I.

Petitioners request that we direct the Secretary of State to exclude former President Trump's name from the Republican Party presidential nomination primary ballot and from the general election ballot for the November 2024 election. We first address whether

---

a major political party for any partisan office except presidential elector and all candidates for nonpartisan office shall apply for a place on the primary ballot by filing an affidavit of candidacy . . . ."). *See generally* Minn. Stat. § 204B.06 (addressing affidavits of candidacy). A candidate becomes a major political party's general election candidate for a partisan office by winning the highest number of votes at the primary among that party's candidates for that office. Minn. Stat. § 204D.10, subd. 1 (2022); *see also* Minn. Stat. § 204D.03, subd. 3(a) (2022) ("If no more than one candidate files for nomination by a major political party for a partisan office, the candidate who filed must be declared the nominee upon the close of filing."). For nonpartisan offices, "[t]he candidates . . . receiving the highest and the next highest number of votes shall be the nominees for that office" in the general election unless more than one individual is to be elected to the same nonpartisan office in which case "the number of nominees shall be equal to twice the number of individuals to be elected, and that number of candidates receiving the highest number of votes shall be the nominees for that office." Minn. Stat. § 204D.10, subd. 3 (2022). In other words, unlike the presidential nomination primary at issue here, in a typical primary, there is a direct connection between the candidates who appear on the primary ballot and the candidates who are placed on the general election ballot.

Finally, "[c]andidates for any partisan office who do not seek the nomination of a major political party shall be nominated by nominating petition as provided in sections 204B.07 and 204B.08." Minn. Stat. § 204B.03. The names of these candidates "shall not be placed on any state primary ballot," Minn. Stat. § 204D.07, subd. 2 (2022), but instead go directly to the general election, Minn. Stat. § 204D.12(2) (2022).

12

petitioners have standing to assert those claims and whether a justiciable controversy exists as to those claims.

To have standing, a party must have "a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). A party can obtain standing in two ways: (1) if it has "suffered some injury in fact," or (2) if it is the beneficiary of "some legislative enactment granting standing." *Id.*[6] Petitioners contend that section 204B.44 grants them standing. We agree.

Minnesota Statutes section 204B.44(a) provides that "[a]ny individual may file a petition in the manner provided in this section for the correction of any of the following errors, omissions, or wrongful acts" regarding the conduct of an election. Accordingly, section 204B.44 gives authority to "[a]ny individual" to file a petition, and we have broadly construed the legislative grant of standing in section 204B.44 controversies. *See League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 645 n.7 (Minn. 2012) (concluding that nonprofit organizations, along with individual petitioners, had standing under section 204B.44). Here, petitioners allege that they are registered voters in Minnesota who intend to vote. In *Clifford v. Hoppe*, 357 N.W.2d 98, 100 n.1 (Minn. 1984), we concluded that a registered voter had a "sufficient interest" in the election to bring a claim under

---

[6]     Our court is not bound by the standing constraints of Article III of the United States Constitution. *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 221 N.W.2d 162, 165 (Minn. 1974); s*ee N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 8 n.2 (1988) ("[T]he special limitations that Article III of the Constitution imposes on the jurisdiction of the federal courts are not binding on the state courts."); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("[S]tate courts are not bound to adhere to federal standing requirements . . . ."). Article VI of the Minnesota Constitution does not have the same limiting language as Article III of the United States Constitution.

section 204B.44. The Petition further represents that petitioners intend to vote in the general election and at least one of the petitioners specifically intends to vote in the Republican Party presidential nomination primary. Accordingly, we hold that petitioners have standing under section 204B.44.

We now turn to the question of ripeness. We cannot exercise jurisdiction over petitioners' claim unless a justiciable controversy exists. *See Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617 (Minn. 2007). A justiciable controversy does not exist unless the claim "is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." *Id.* at 618. We decide present problems, not hypothetical ones: "Issues which have no existence other than in the realm of future possibility are purely hypothetical and are not justiciable." *Lee v. Delmont*, 36 N.W.2d 530, 537 (Minn. 1949). Such issues are not ripe for adjudication and so are not justiciable. *See Bailey v. Noot*, 324 N.W.2d 164, 167–68 (Minn. 1982) (refusing to hear a constitutional claim because the person asserting the claim "cannot know at this time" whether a constitutional right will be violated).

Further, section 204B.44(a) provides that a person may seek to correct errors, omissions, or wrongful acts "which have occurred or are about to occur." Minn. Stat. § 204B.44(a). If an act has not already occurred or is not about to occur, a person cannot bring a claim under the statute.

We conclude that, as of our order dated November 8, 2023, one of petitioners' claimed errors—that the Secretary of State will place former President Trump's name on the Republican Party presidential nomination primary ballot—was ripe and "about to

14

occur" under section 204B.44(a).  The 2024 presidential nomination primary will occur on March 5, 2024.  Major political parties in Minnesota wishing to participate in the presidential nomination primary were required to submit the names of the candidates that will appear on their respective presidential nomination primary ballots no later than January 2, 2024.  Minn. Stat. §§ 207A.11(b), 207A.13, subd. 2(a).  According to the Secretary of State, due to deadlines in state and federal law, Minnesota election officials had to provide printed ballots and programmed assistive voting equipment to voters no later than January 19, 2024.  The Secretary of State also informed us that to meet this deadline, election officials were required to have the final list of candidates for the presidential nomination primary ballot no later than the close of business on January 5, 2024.  No party has disputed these facts.

Further, in our November 2023 order in this matter, we noted that although it was not an absolute certainty that the Republican Party of Minnesota would submit former President Trump's name to appear on the Republican Party presidential nomination primary ballot for 2024, it was nearly certain.  We now know that former President Trump is a candidate on the Republican Party presidential nomination primary ballot for 2024.  Republican Party of Minn., *Hann Announces Presidential Primary Candidates* (Dec. 13, 2023), https://www.mngop.org/2023/12/13/hann-announces-presidential-primary-candidates/.  In light of these facts, we hold that the alleged error of placing former President Trump's name on the 2024 Republican Party presidential primary ballot is justiciable and was "about to occur" at the time of our order and how now "occurred" under section 204B.44(a).

15

We reach a different conclusion regarding petitioners' claim that it would be error for the Secretary of State to place former President Trump's name on the 2024 general election ballot. That claim is neither ripe nor "about to occur" under section 204B.44(a). The Republican National Convention, at which the candidate for the Republican Party will be chosen, will not occur until July 15–18, 2024. Republican Nat'l Comm., *RNC Announces Dates of 2024 Convention in Milwaukee* (Dec. 21, 2022), https://gop.com/press-release/rnc-announces-dates-of-2024-convention-in-milwaukee/. At the time we issued our order in November 2023, multiple candidates were seeking the Republican nomination for president in 2024. Martín González Gómez & Maggie Astor, *Who's Running for President in 2024?*, NY Times, www.nytimes.com/interactive/2023/us/politics/presidential-candidates-2024.html (last visited Jan. 24, 2024). Indeed, in December, the Republican Party of Minnesota designated five candidates to appear on its presidential nomination primary ballot in 2024: former New Jersey Governor Chris Christie, Florida Governor Ron DeSantis, former South Carolina Governor and former U.N. Ambassador Nikki Haley, Vivek Ramaswamy, and former President Trump.[7] Republican Party of Minn., *supra*. The Republican Party also did request that the ballot include a blank line for write-in candidates. Dana Ferguson, *DFL, GOP set Minnesota presidential primary ballots with multiple choices on each*, MPR News (Dec. 13, 2023), https://www.mprnews.org/story/2023/12/13/dfl-gop-

---

[7]     Since December 2023, Florida Governor Ron DeSantis, former New Jersey Governor Chris Christie, and Vivek Ramaswamy have suspended their presidential campaigns. Lisa Lerer, Jazmine Ulloa & Michael C. Bender, *Haley Gets a Trump Matchup, but Now Faces the Trump Machine*, NY Times (Jan. 22, 2024), https://www.nytimes.com/2024/01/22/us/politics/nikki-haley-new-hampshire--primary. html.

16

set-minnesota-presidential-primary-ballots-with-multiple-choices-on-each. Between now and July 15, 2024, when the Republican National Convention begins, all the states and territories of the United States must choose the delegates who will represent them at the national convention. The national convention must be held. Following the convention, the major party chairs have until August 26, 2024—71 days before the November 5, 2024, general election—to "certify to the secretary of state the names of the persons nominated as presidential electors, the names of persons nominated as alternate presidential electors, and the names of the party candidates for president and vice president." Minn. Stat. § 208.03. History tells us that a lot may happen in this election between now and the national conventions.

The dispute over whether former President Trump should be excluded from the 2024 general election ballot is too remote and hypothetical to be a ripe, justiciable controversy at this time. Likewise, petitioners' claim that the Secretary of State will commit an error by placing former President Trump's name on the 2024 general election ballot is not "about to occur" under section 204B.44(a). Accordingly, we lack jurisdiction to consider petitioners' claim that it would be error for the Secretary of State to place former President Trump's name on the 2024 general election ballot.

The Secretary of State asks us to exercise our discretionary power to hear the unripe claim related to the general election ballot because the argument is functionally justiciable. Functional justiciability is a doctrine that we apply to hear certain claims that are moot. In the context of moot claims, we have said that "[w]e may exercise discretion to hear an issue that is functionally justiciable when the issue presents an important question of statewide

17

significance that should be decided immediately." *Snell v. Walz*, 985 N.W.2d 277, 284 (Minn. 2023) (quoting *Dean v. City of Winona*, 868 N.W.2d 1, 6 (Minn. 2015)) (internal quotation marks omitted). We have applied this doctrine narrowly. *Id.* And we have never applied this doctrine to resolve claims that we otherwise would not have jurisdiction to decide because the claims are not ripe.

The Secretary of State proposes that we extend application of the functional justiciability doctrine beyond moot claims to claims that are not ripe.[8] It is true, as the Secretary of State posits, that mootness and ripeness are both questions of justiciability. Generally speaking, mootness considers whether subsequent events have rendered a once justiciable dispute no longer justiciable because " 'a decision on the merits is no longer necessary or an award of effective relief is no longer possible.' " *Quinn v. LMC NE Minneapolis Holdings, LLC*, 985 N.W.2d 571, 573 (Minn. 2023) (order) (quoting *Dean*, 868 N.W.2d at 5). In contrast, ripeness considers whether a dispute is brought too early. *State ex rel. Ford v. Schnell*, 933 N.W.2d 393, 402 (Minn. 2019). Nonetheless, we decline the Secretary of State's invitation to apply the functional justiciability doctrine to exercise jurisdiction over an unripe claim in this case.

---

[8] Like the other parties here, the Secretary of State makes no distinction in his argument between the justiciability of petitioners' claim regarding the presidential nomination primary ballot and the justiciability of petitioners' claim regarding the general election ballot for the November 2024 election. When appropriate, we have analyzed independently the justiciability of different claims within a particular case. *See, e.g.*, *Snell*, 985 N.W.2d at 286–87 (concluding that we would exercise our discretion to hear one technically moot claim but would not decide other moot claims). We conclude it is appropriate to do so here.

The case before us is functionally justiciable as we have understood that concept in the mootness context. "A case is functionally justiciable if the record contains the raw material (including effective presentation of both sides of the issues raised) traditionally associated with effective judicial [decision-making]." *Dean*, 868 N.W.2d at 6 (alteration in original) (quoting *State v. Rud*, 359 N.W.2d 573, 576 (Minn. 1984)) (internal quotation marks omitted). Even if the claim is functionally justiciable, we also consider whether we should exercise our discretion and hear the nonjusticiable claim immediately. *Quinn*, 985 N.W.2d at 573 (refusing to hear a moot but functionally justiciable claim because it did not present "a matter of urgent statewide significance"). We are not convinced we should exercise our discretion to hear immediately the otherwise unripe claim that the name of former President Trump should be removed from the general election ballot.

The question of whether former President Trump should be barred from running for president and holding the office of president is obviously important and has garnered substantial public interest and scholarly attention. But this is similar to the type of nonjusticiable claims that we have previously declined to consider. It is a case that requires us to address "fundamental constitutional questions about the relative powers of" different branches of our government as well as significant issues of federalism. *Limmer v. Swanson*, 806 N.W.2d 838, 838–39 (Minn. 2011) (order) (declining to exercise our discretion to resolve a functionally justiciable but technically moot case over the authority of a district court to authorize expenditures by executive branch agencies after the Legislature failed to pass appropriation bills for those agencies before the constitutional deadline).

Finally, section 204B.44(a) itself only authorizes a petition to correct errors, omissions, or wrongful acts that "have occurred or are about to occur." The placement of former President Trump's name on the 2024 general election ballot is not "about to occur." This statutory limitation also prevents us from hearing the general election ballot claim— even if it is functionally justiciable.

Consequently, we decline to extend our functional justiciability doctrine to the circumstances of this case and hear petitioners' unripe claim that we should order the Secretary of State to keep former President Trump's name off the 2024 general election ballot.[9]

## II.

We now turn to the question of whether we can direct the Secretary of State to exclude former President Trump's name from the Republican Party presidential nomination primary ballot. Petitioners argue that we can do so under section 204B.44(a). That provision states:

> Any individual may file a petition in the manner provided in this section for the correction of any of the following errors, omissions, or wrongful acts which have occurred or are about to occur:
>
> (1) an error or omission in the placement or printing of the name or description of any candidate or any question on any official ballot, including the placement of a candidate on the official ballot who is not eligible to hold the office for which the candidate has filed;

---

[9] Because petitioners' claim that it would be error for the Secretary of State to place former President Trump's name on the November 2024 general election ballot is not about to occur and because the claim is not ripe, we do not reach the merits of that claim. Our decision today does not foreclose petitioners from bringing such a claim at a later date, and we express no opinion on the merits of such a claim.

(2) any other error in preparing or printing any official ballot;

(3) failure of the chair or secretary of the proper committee of a major political party to execute or file a certificate of nomination;

(4) any wrongful act, omission, or error of any election judge, municipal clerk, county auditor, canvassing board or any of its members, the secretary of state, or any other individual charged with any duty concerning an election.

Minn. Stat. § 204B.44(a).

As we discussed earlier in the opinion, the winner of the presidential nomination primary will not necessarily continue on as the candidate in the general election. *See supra* note 6. To the extent that section 204B.44(a)(1) permits an individual to challenge the "placement of a candidate on the official ballot who is not eligible to hold the office for which the candidate has filed," that specific provision does not apply to presidential nomination primary candidates. *See* Minn. Stat. § 204B.06, subd. 4 ("Candidates for president or vice president of the United States are not required to file an affidavit of candidacy for office."). We do not decide today whether the inclusion of an ineligible or disqualified presidential candidate on the general election ballot would fall within the broader catchall categories under section 204B.44(a) of an "error of . . . the secretary of state" or an "error . . . in the placement or printing of the name . . . of any candidate . . . on any official ballot" for which an individual may petition this court for correction.[10] Our

---

[10] We have considered section 204B.44 petitions alleging that election statutes violated constitutional provisions. *See, e.g.*, *De La Fuente*, 940 N.W.2d at 490, 492, 496–97 (holding that the procedure established by Minn. Stat. § 207A.13 (2020), which allows a major political party to determine which candidates' names will be on the presidential nomination primary ballot, did not violate the Minnesota Constitution's prohibition against special privileges, the Presidential Eligibility Clause of the United

21

holding today is limited. We simply hold that it is not an error under section 204B.44 if former President Trump's name is included on the presidential nomination primary ballot, based on the unique features of the process the Legislature enacted in chapter 207A and the express limitations on the authority of the Secretary of State to interfere with that process.

As discussed above, the Legislature established the presidential nomination primary process to allow major political parties to select delegates to the party's national convention; delegates at that national convention will cast votes along with delegates from all of the other states and territories for the purpose of choosing a presidential candidate for the party. As we noted in *De La Fuente*, the statutory scheme for the presidential nomination primary, which "directs political parties to determine which names will be on the ballot as the party's candidate(s), and then submit those names to the secretary of state as the candidates 'for that party,' " is simply "a process that allows political parties to obtain voter input in advance of a nomination decision made at a national convention." 940 N.W.2d at 492 (quoting Minn. Stat. § 207A.13, subd. 2(a)). Although the Secretary

States Constitution, or the petitioners' rights of free association under the First and Fourteenth Amendments to the United States Constitution); *In re Candidacy of Indep. Party Candidates v. Kiffmeyer*, 688 N.W.2d 854, 860–61 (Minn. 2004) (holding that a statute that imposed a threshold vote percentage in the primary election for a major political party's nominees to appear on the general election ballot violated the First and Fourteenth Amendment rights of those candidates and their supporters); *Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 732–34 (Minn. 2003) (holding that a statute prohibiting the mailing of a replacement ballot for the general election to certain absentee voters after the death of a candidate violated constitutional rights to equal protection). Petitioners do not challenge the constitutionality of chapter 207A or any other election statute. Our ruling here does not call into question our general ability to consider such claims in a section 204B.44 petition.

of State and other election officials administer the mechanics of the election, the presidential nomination primary is an internal party election to serve internal party purposes. The winners of the major political party's presidential nomination primaries do no not automatically advance to the general election ballot as candidates for President of the United States in Minnesota or anywhere else in the United States.[11]

Further, the decision of which candidates to place on the presidential nomination primary ballot rests with the party; the Legislature expressly directed that "[o]nce submitted, changes *must not be made* to the candidates that will appear on the ballot." Minn. Stat. § 207A.13, subd. 2(a) (emphasis added). As a matter of state law, the Secretary of State has no authority to interfere with that process in the context of a presidential nomination primary.[12] More critically, there is no Minnesota statute that prohibits a major

---

[11]    Indeed, the winner of Minnesota's delegates to a major party national convention does not always prevail at the national convention. In 2016, under the previous presidential preference vote system, Vermont Senator Bernie Sanders prevailed over former New York Senator and former Secretary of State Hillary Clinton in Minnesota, and Florida Senator Marco Rubio and Texas Senator Ted Cruz outpolled Donald Trump. Wilson Andrews, Matthew Bloch, Jeremy Bowers & Tom Giratikanon, *Minnesota Caucus Results*, N.Y. Times (Sept. 29, 2016), www.nytimes.com/elections/2016/results/primaries/minnesota.

[12]    Our decision in *De La Fuente* confirms this same principle as applied to the current presidential nomination primary statutory scheme. As we observed in that case, "a political party could (in theory) submit the names of *every* announced candidate for president, and because 'changes must not be made' once the party does so, the secretary of state would be required to use a ballot that includes every submitted name." *De La Fuente*, 940 N.W.2d at 495 (citation omitted). Indeed, there, the Secretary of State conceded that under these statutes, the Secretary of State has no authority to inquire into a party's candidate decisions for the presidential nomination primary ballot. *Id.* The Secretary of State has effectively maintained that same position here. And we do not see anything in section 204B.44 or the statutes governing the presidential nomination primary process which permits us to intrude where the Legislature has determined that the Secretary of State may not.

23

political party from including an ineligible candidate on the presidential nomination primary ballot or sending delegates to the national convention to support an ineligible candidate; this is different from the Colorado primary statutory scheme that requires candidates to be "qualified."[13] There is no error to correct here as to the presidential nomination primary ballot.[14]

---

[13] The Colorado Supreme Court recently concluded that former President Trump is "disqualified from holding the office of President" under Section 3 of the Fourteenth Amendment and that "certifying an unqualified candidate to the presidential primary ballot constitutes a 'wrongful act' that runs afoul of" Colorado law. *Anderson v. Griswold*, ___ P.3d ___, 2023 CO 63, 2023 WL 8770111, at *3, 13 (Colo. Dec. 19, 2023). Colorado has a statutory scheme regarding presidential primary elections that is distinct from Minnesota's. Presidential primary elections in Colorado are limited by statute to "qualified" candidates. Colo. Stat. § 1-4-1203(2)(a). Minnesota's statutes on the presidential nomination primary process do not contain a comparable provision.

[14] We also observe that the Republican Party has First Amendment associational rights to gather for the purpose of advancing shared beliefs including strong associational rights in delegate selection. *See Democratic Party of the U.S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 121 (1981). As we noted in *De La Fuente*, "the right to vote in a state *primary* on a presidential nominee is not integral to our republican form of government," where "[t]he U.S. Constitution mentions neither political parties, nor the presidential nominating process." *De La Fuente*, 940 N.W.2d at 495 n.19 (emphasis added). And to the extent that the presidential nomination primary is directed towards the party selecting its candidate, "the associational rights of political parties to choose a candidate are well-established," including "a First Amendment right 'to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform.' " *Id.* at 496 (quoting *N.Y. State Bd. of Elections v. López Torres*, 552 U.S. 196, 202 (2008)). At the same time, it is true that the State has "a legitimate interest in regulating 'parties, elections, and ballots to reduce election and campaign-related disorder.' " *Id.* at 493–94 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). Here, the Legislature has granted to major political parties discretion over the selection of candidates who will appear on the presidential nomination primary ballots and expressly barred the Secretary from changing that selection. Minn. Stat. § 207A.13, subd. 2(a). The presidential nomination primary process is limited to selecting delegates to the party's national convention; it does not implicate the State's strong interest that we have recognized in ensuring the integrity of the ballot for the general election in which presidential electors will be selected. The presidential nomination primary is an internal party election; it is only tangentially

24

**CONCLUSION**

Accordingly, we dismiss the Petition with prejudice as it relates to the placement of former President Trump's name on the presidential nomination primary ballot. We dismiss the Petition without prejudice as it relates to the placement of former President Trump's name on the general election ballot.

CHUTICH, PROCACCINI, JJ., took no part in the consideration or decision of this case.

---

connected to the general election process. And the Legislature has not prohibited major political parties from selecting delegates to the national convention who will support an arguably ineligible candidate.

(/)

CONTRIBUTE
(HTTPS://SECURE.WINRED.COM/REPUBLICAN-PARTY-OF-
MINNESOTA/DONATE)

ABOUT ⌄

GET
INVOLVED ⌄

SHOP

CONTACT
US

# HANN ANNOUNCES PRESIDENTIAL PRIMARY CANDIDATES

MINNEAPOLIS, MN – The Republican Party of Minnesota is excited to announce that its 2024 Republican presidential primary ballot is finalized. Just this morning, Chairman David Hann submitted the following five candidates to Secretary Simon per Statute 207A.13:

- Former Governor Chris Christie
- Governor Ron DeSantis
- Former Governor and UN Ambassador Nikki Haley
- Vivek Ramaswamy
- Former President Donald J. Trump

The presidential primary will be held on Tuesday, March 5 th , 2024, with absentee voting beginning on January 19 th . Chairman Hann encourages every Minnesotan to find their polling place at https://pollfinder.sos.state.mn.us/ (https://pollfinder.sos.state.mn.us/) and vote!

---

⬅ Previous Post

HANN STATEMENT ON BUDGET FORECAST (https://www.mngop.org/2023/12/12/hann-statement-on-budget-forecast/)

Next Post ➡

HANN, BERGSTROM DENOUNCE NEW STATE FLAG; LAUNCH WEBSITE TO SAVE THE CURRENT STATE FLAG (https://www.mngop.org/2024/01/09/hann-bergstrom-denounce-new-state-flag-launch-website-to-save-the-current-state-flag/)



(https://www.mngop.org)

© 2023, REPUBLICAN PARTY OF MINNESOTA
7400 METRO BLVD, SUITE 424
EDINA, MN 55439
P: (651) 222-0022 | E: INFO@MNGOP.COM

Paid for by the Republican Party of Minnesota. Not authorized by any candidate or candidate's committee.

PRESS RELEASE

# RNC ANNOUNCES DATES OF 2024 CONVENTION IN MILWAUKEE

🕐 DEC 21, 2022

WASHINGTON – Today, the Republican National Committee (RNC) announced that the 2024 Republican National Convention in Milwaukee, WI, will be held from July 15-18, 2024.

RNC Chairwoman Ronna McDaniel, Milwaukee 2024 Host Committee Chair Reince Priebus, and Milwaukee Mayor Cavalier Johnson issued the following statements:

RNC Chairwoman Ronna McDaniel:
"We are excited to announce July 15-18, 2024 as the week Republicans will select our nominee to be the next president of the United States. We look forward to our continued work with the beautiful city of Milwaukee to make this convention week a success. Republicans will stand united in Milwaukee in 2024 to share our message of freedom and opportunity with the world."

Milwaukee 2024 Host Committee Chair Reince Priebus:
"I could not be more proud of the leadership of those who are making the 2024 RNC Convention in Milwaukee possible. The location is set, the dates are booked, and now the work of pulling off the biggest event in politics is underway. With partners like the RNC and the city of Milwaukee, we are confident the RNC Convention will be the gold standard for decades to come."

Milwaukee Mayor Cavalier Johnson:
"We are thrilled to welcome the 2024 Republican National Convention to Milwaukee. Our city is ready to show the world we are open for business, conventions, and tourism. The presidential nomination convention is a historical opportunity to present what a phenomenal place Milwaukee truly is."

There will be a ceremony celebrating the convention in January in Dana Point, CA during the RNC Winter Meeting.

CONNECT

Republican National Committee

Chairwoman Ronna McDaniel

Co-Chair Drew McKissick



© Copyright 2024 All Rights Reserved - Privacy Policy - Contact Us

By providing your phone number, you are consenting to receive calls and recurring SMS/MMS messages, including artificial, pre-recorded, autodialed and automated calls and texts, to that number from the Republican National Committee. Msg&data rates may apply. Reply HELP for help, STOP to end. Use of military rank, job titles, and photographs in uniform does not imply endorsement by any branch of the U.S. Military or the Department of Defense. Terms & conditions/privacy policy apply www.80810-info.com

Paid for by the Republican National Committee. Not Authorized By Any Candidate Or Candidate's Committee. www.gop.com

# Who's Running for President in 2024?

Updated Jan. 21, 2024

**Democrats**                                    **Republicans**

Biden      Williamson      Phillips               Trump          Haley          Binkley

**Independent and third-party**

Kennedy          West          Stein

---

**Dropped out**

Burgum      Christie      DeSantis      Elder      Hurd      Hutchinson

Johnson      Pence      Ramaswamy      Scott      Suarez

**Not running**

Chris Sununu (R), Larry Hogan (R), Mike Pompeo (R)

**By Martín González Gómez and Maggie Astor**

Though there was no shortage of people running for president in 2024, most of them labored under the shadow of the same two men who faced off in 2020: President Biden and former President Donald J. Trump.

Updated Jan. 21

**Latest update**

Gov. Ron DeSantis of Florida suspended his presidential campaign just before the New Hampshire primary, leaving a two-person race between Donald J. Trump and Nikki Haley.

Most of Mr. Trump's Republican challengers ended their campaigns before a single vote was cast, and he overwhelmingly won the first-in-the-nation Iowa caucuses over the remaining field — partly because voters did not coalesce around a single alternative, but also because of the tight hold he still exerts on the party's base.

On the Democratic side, Mr. Biden is similarly dominating the field.

**Campaigns 2016 to 2024: When Candidates Entered and Exited Their Races**
In the past two presidential election cycles, most announced their bids by summer the year before Election Day and dropped out by Super Tuesday.



Source: New York Times reporting and Ballotpedia · Note: John Delaney and Andrew Yang, both Democrats, are omitted from the chart. Each announced his candidacy more than 1,000 days before Election Day in 2020.

ADVERTISEMENT

# More about the candidates

Find a candidate ▾

## Democrats

**Joseph R. Biden Jr.**

Current president

82 years old on Inauguration Day

**Marianne Williamson**

Self-help author

72 years old on Inauguration Day

President Biden has cast himself as a protector of democracy and a stabilizing force after the upheaval of the Trump administration.

**Read more** ⌄

Marianne Williamson, a self-help author and former spiritual adviser to Oprah Winfrey, is running for a second time.

**Read more** ⌄

### Dean Phillips

Representative from Minnesota

56 years old on Inauguration Day

Dean Phillips, a moderate Democrat elected to the House in 2018, has few major policy disagreements with President Biden and has supported his agenda in Congress, but argues that Mr. Biden's age and low approval ratings mean the party should nominate someone else.

**Read more** ⌄

## Republicans  *Read more: Candidates on the issues ›*

### Donald J. Trump

Former president and businessman

78 years old on Inauguration Day

Former President Donald J. Trump is running to retake the office he lost in 2020, then denied losing to the point of inciting a mob of his supporters to attack the United States Capitol.

**Read more** ⌄

### Nikki Haley

Former governor and U.N. ambassador

53 years old on Inauguration Day

Nikki Haley, a former governor of South Carolina and United Nations ambassador under Mr. Trump, has presented herself as a member of "a new generation of leadership" and emphasized her life experience as a daughter of Indian immigrants.

**Read more** ⌄

### Ryan Binkley

Businessman and pastor

57 years old on Inauguration Day

Ryan Binkley is the president of a mergers and acquisitions firm and the pastor of a Texas church. He has never held or run for elected office before.

Read more ⌄

## Independent and third-party

### Robert F. Kennedy Jr.

Anti-vaccine activist

71 years old on Inauguration Day

Robert F. Kennedy Jr., a nephew of former President John F. Kennedy, is a prominent anti-vaccine activist. He initially ran for the Democratic nomination before announcing in October that he would run as an independent instead.

Read more ⌄

### Cornel West

Professor and progressive activist

72 years old on Inauguration Day

Cornel West has taught at Yale, Princeton and Harvard and is currently a professor of philosophy at Union Theological Seminary. He is known for his progressive activism, including his sharp criticism of former President Barack Obama.

Read more ⌄

### Jill Stein

Doctor and activist

74 years old on Inauguration Day

Jill Stein, a physician who ran for president on the Green Party ticket in 2012 and 2016, is seeking the party's nomination for a third time. In a video announcing her campaign, she called for an "economic bill of rights" that would include a

guaranteed right to employment, health care, housing, food and education, and also highlighted support for combating climate change and protecting abortion and transgender rights.
**Read more** ⌄

Photo production by Jessica White and Amanda Cordero.



**Election 2024**

# DFL, GOP set Minnesota presidential primary ballots with multiple choices on each

**Dana Ferguson**   December 13, 2023 2:44 PM



In this file photo, voters cast their ballots at Temple Israel polling station on Nov. 7 in Minneapolis.     Kerem Yücel | MPR News

Minnesota's DFL and Republican parties on Wednesday submitted names of candidates for the state's presidential primary ballots.

Both parties include frontrunners along with lesser known candidates. Party leaders had to submit names to the Secretary of State's Office to be included on presidential primary ballot.

Minnesota voters will weigh in on March 5 in the primary contests but early voting starts on Jan. 19 — four days after the nominating season kicks off with the Iowa caucus.

The names on the party lists might not reflect the candidates still in the running by the time Minnesota's votes are counted on Super Tuesday.

DFL voters will consider nine candidates, including President Joe Biden, Minnesota U.S. Rep. Dean Phillips and repeat candidate Marianne Williamson.

There are also "uncommitted" and write-in lines, although write-in votes are counted for specific candidates only if a party chair requests it.

According to a party spokesperson, the Minnesota GOP advanced five candidates: former President Donald Trump, current and former Govs. Chris Christie, Ron DeSantis and Nikki Haley and businessman Vivek Ramaswamy. The party also intends to allow for write-ins.

Minnesota revived its presidential primary four years ago after a hiatus. About 685,000 of the state's nearly 3.4 million registered voters participated.

Trump was the only name on the Republican ballot oppose a write-in line; he got about 98 percent of the vote.

Biden won a crowded race on the Democratic side with nearly 39 percent of the vote on the higher turnout side of the ballot.

Minnesota doesn't have party registration, but the primary does require voters to swear an oath declaring themselves in "general agreement with the principles of the party" whose ballot they pick. The parties will receive lists of voters in their primary, which can pay dividends later when they work to gin up turnout in other state, local and federal elections.

Phillips looks past South Carolina on rocky presidential race path
Why Nevada has both a primary election and Republican caucus next week
Trump will meet with the Teamsters in Washington as he tries to cut into Biden's union support

## Grow the Future of Public Media

MPR News is supported by Members. Gifts from individuals power everything you find here. Make a gift of any amount today to become a Member!

Donate Today



© 2024 Minnesota Public Radio. All rights reserved.

# Haley Gets a Trump Matchup, but Now Faces the Trump Machine

As Nikki Haley celebrated Ron DeSantis's departure from the Republican primary, Donald J. Trump turned his firepower toward his final rival.

  

**By Lisa Lerer, Jazmine Ulloa and Michael C. Bender**
Published Jan. 22, 2024   Updated Jan. 24, 2024

**Sign up for the On Politics newsletter.**  Your guide to the 2024 elections.
Get it sent to your inbox.

With only about 48 hours left to campaign in the New Hampshire primary, Nikki Haley finally got the two-person race she wanted.

It might not live up to her expectations.

For months, it has been an article of faith among Ms. Haley's supporters and a coalition of anti-Trump Republicans that the only way to defeat Donald J. Trump was to winnow the field to a one-on-one contest and consolidate support among his opponents.

That wishcasting became reality on Sunday afternoon, when Gov. Ron DeSantis of Florida ended his White House bid.

And yet, as the race reached the final day, there was little sign that Mr. DeSantis's departure would transform Ms. Haley's chances of winning.

Ms. Haley quickly learned that the role of last woman standing against Mr. Trump meant serving as the last target for a party racing to line up behind the former president.

Two former rivals in the race — Senator Tim Scott of South Carolina, and Mr. DeSantis — both endorsed the former president. The head of the party's Senate campaign arm proclaimed Mr. Trump to be the "presumptive nominee." And Mr. Trump's campaign strategists vowed that she would be "absolutely embarrassed and demolished" in her home state of South Carolina, the next big prize on the calendar.

Campaigning across New Hampshire on Sunday, Ms. Haley and her supporters celebrated the DeSantis campaign's demise.

"Can you hear that sound?" she asked more than 1,000 gathered in a high school gymnasium in Exeter, N.H., her best-attended event in the state. "That's the sound of a two-person race."

Thirty-five miles north, in Rochester, N.H., Mr. Trump told his crowd to expect a victory so decisive it would effectively end the primary. "That should wrap it up," he said.



Mr. Trump during a campaign rally at the Rochester Opera House on Sunday in New Hampshire. Doug Mills/The New York Times

Ms. Haley's supporters in the state said they were feeling that pressure. Some worried aloud that she had pulled punches with Mr. Trump for so long that her aggressiveness in the primary's final weekend would be inadequate to persuade flinty New Hampshire voters that she had enough fight in her to win against the brawling former president.

One Republican activist backing Ms. Haley said he kept his lawn sign in his garage because Mr. Trump's victory felt inevitable. Another Haley backer, Fergus Cullen, a former chairman of the New Hampshire Republican Party, described his support for the former governor as unenthusiastic. He said he could not bring himself to defend Ms. Haley on social media or lean on friends and family to vote for her.

"Too little, too late," Mr. Cullen said about Ms. Haley's prospects. "She had to inspire and engage unaffiliated voters, and I just haven't seen her doing what she needs to do to reach that audience and turn them out in the numbers that she needs."

Most polls during the past week showed Mr. Trump up by a dozen points or more. A Suffolk University/Boston Globe/NBC10 Boston daily tracking poll of New Hampshire voters showed Mr. Trump steadily adding to his lead over Ms. Haley, with a margin of 53 percent to 36 percent on Saturday.

Ms. Haley's performance on Tuesday is likely to determine the future of her campaign — and possibly her political career. Anything short of a victory or narrow defeat would put pressure on her to drop out rather than face three weeks of punishing ads from the Trump campaign in her home state, where she is already behind.

Her best shot at survival is high turnout from New Hampshire's independent voters, who make up 40 percent of the state's electorate, while Republicans account for about 30 percent.

The New Hampshire secretary of state has been predicting record high turnout on Tuesday, a scenario that both campaigns were claiming would bolster their chances of success.

Ms. Haley's team believes a turnout surge would mean more participation from independent and moderate voters who are more likely to support her. They looked to Senator John McCain's 2008 presidential campaign as a model. Mr. McCain won the state's primary by dominating independent voters and battling to a draw among Republicans, according to exit polls.

Ms. Haley, however, appears to be trailing by a large margin among Republicans, according to public polls. In the tracking poll, Ms. Haley led independents, 49 percent to 41, but was nearly 20 points behind Mr. Trump overall largely owing to his wide margin from Republicans, 65 percent to 25 percent.

Ms. Haley on Sunday with supporters in Derry, N.H. Ruth Fremson/The New York Times

Ms. Haley's donors and allies argued Mr. DeSantis's departure could reel in more donations and help her sharpen the contrast between herself and the former president. Both Ms. Haley and Mr. DeSantis struggled to find ways to criticize Mr. Trump without turning off Republicans who may be open to alternatives, but are still fond of him.

But some longtime political operatives in the state suggested there might not be enough anti-Trump Republicans and moderate independents to make the numbers work.

"Haley has consolidated the non-Trump vote, but overtaking him is the Rubik's Cube no one has been able to figure out yet," said Matt Mowers, a former Republican House candidate from New Hampshire who was endorsed by both Mr. Trump and Ms. Haley.

As she delivered her stump speech on Saturday with new urgency, Ms. Haley's attacks on Mr. Trump were sometimes softened by including Mr. Biden in the critique.

"What are Joe Biden and Donald Trump both talking about?" Ms. Haley asked, at her rally in Exeter. "The investigations that they are in, the distractions they have, the people they're mad at, their hurt feelings, and they have not shown us one ounce of vision for the future — not one."

Jane Freeman, 55, a retired flight attendant and undeclared voter in Exeter, scrunched her forehead and let out a sigh when asked about Mr. DeSantis's endorsement of Mr. Trump.

"Trump is a tricky thing," said Ms. Freeman, who voted for the former president in 2016 and in 2020 but now supports Ms. Haley. "I really wish he would have waited," she said of Mr. DeSantis. Still, she said Ms. Haley had the right momentum and was continuing to win voters. "I am nervous, but truly, truly hopeful," she said.

Anjali Huynh and Michael Gold contributed reporting.

**Lisa Lerer** is a national political reporter for The Times, based in New York. She has covered American politics for nearly two decades. More about Lisa Lerer

**Jazmine Ulloa** is a national politics reporter for The Times, covering the 2024 presidential campaign. She is based in Washington. More about Jazmine Ulloa

**Michael C. Bender** is a Times political correspondent covering Donald J. Trump, the Make America Great Again movement and other federal and state elections. More about Michael C. Bender

A version of this article appears in print on , Section A, Page 1 of the New York edition with the headline: Machine Supporting Ex-President Has One Target Left

President | Senate | House | Primary Results

President | Senate | House

# Minnesota Caucus Results March 1

SEPT. 29, 2016, 10:37 AM ET

## President

| REPUBLICANS | | DEMOCRATS | |
|---|---|---|---|
| Marco Rubio | 36.5% | Bernie Sanders | 61.6% |
| Ted Cruz | 29.0 | Hillary Clinton | 38.4 |
| Donald J. Trump | 21.3 | Rocky De La Fuente | 0.0 |

96% reporting | 90% reporting

Winner called by A.P. | Winner called by A.P.

## Republican Results

## Republican Caucuses

### Marco Rubio won Minnesota, according to A.P.

| CANDIDATES | VOTE | PCT. | DELEGATES |
|---|---|---|---|
| Marco Rubio | 41,126 | 36.5% | 17 |
| Ted Cruz | 32,684 | 29.0 | 13 |
| Donald J. Trump | 24,018 | 21.3 | 8 |
| Ben Carson | 8,233 | 7.3 | — |
| John Kasich | 6,488 | 5.8 | — |
| Write-In | 206 | 0.2 | — |

112,755 votes, 96% reporting (3,944 of 4,109 precincts)

Winner called by A.P.

**LEADER**

Rubio        Cruz

## Democratic Results

## Democratic Caucuses

# Bernie Sanders won Minnesota, according to A.P.

| CANDIDATES | VOTE | PCT. | DELEGATES |
|---|---|---|---|
| Bernie Sanders | 118,135 | **61.6%** | 46 |
| Hillary Clinton | 73,510 | **38.4** | 31 |
| Rocky De La Fuente | 1 | **0.0** | — |
| Martin O'Malley | 0 | **0.0** | — |
| Uncommitted | 1 | **0.0** | — |
| Other | 0 | **0.0** | — |

191,647 votes, 90% reporting (3,691 of 4,109 precincts)

Winner called by A.P.

**LEADER**
Sanders



**LEADER**
Rubio     Cruz



Duluth

Minneapolis

Rochester

**LEADER**
Sanders

## Live Results Model

The Upshot's estimates of election results include the parts of a state that have not yet reported their votes.

We think **Marco Rubio** is up by around 8 points. **MORE »**
Updated at 3:03 AM ET with 92% of precincts reporting

We think **Bernie Sanders** is up by around 21 points. **MORE »**
Updated at 3:03 AM ET with 92% of precincts reporting

## How Republicans Voted

**Size of lead**



**LEADER**

Rubio    Cruz

Circle size is proportional to the
size of a candidate's lead.



### Rubio

**RUBIO'S VOTE SHARE**

15  25  35  45%

### Cruz

**CRUZ'S VOTE SHARE**

15  25  35  45%

## How Democrats Voted

### Size of lead



Circle size is proportional to the
size of a candidate's lead.



| Sanders | Clinton |
|---|---|
| **SANDERS'S VOTE SHARE** | **CLINTON'S VOTE SHARE** |
| 15  30  45  60% | 15  30  45  60% |

---

## Republicans

Live model

**38 delegates**

**Past Winners**
Rick Santorum 2012 Mitt Romney 2008 George W. Bush 2000

## Democrats

Live model

**93 delegates**

**Past Winners**
Barack Obama 2008 John Kerry 2004 Al Gore 2000

Source: Election results from The Associated Press

By Wilson Andrews, Matthew Bloch, Jeremy Bowers and Tom Giratikanon

**Full Primary Results**

Alabama

Arizona

California

Connecticut

District of Columbia

Georgia

Idaho

Illinois

Iowa

Kentucky

Maine

Massachusetts

Minnesota

Missouri

Montana

Nevada

New Jersey

New York

North Dakota

Oklahoma

Pennsylvania

Rhode Island

South Dakota

Texas

Vermont

Washington State

Alaska

Arkansas

Colorado

Delaware

Florida

Hawaii

Indiana

Kansas

Louisiana

Maryland

Michigan

Mississippi

Nebraska

New Hampshire

New Mexico

North Carolina

Ohio

Oregon

South Carolina

Tennessee

Utah

Virginia

West Virginia

Wisconsin

Wyoming


Alabama

Alaska

Arizona

Arkansas

California

Colorado

Connecticut

Delaware

District of Columbia

Florida

Georgia

Hawaii

Idaho

Illinois

Indiana

Iowa

Kansas

Kentucky

Louisiana

Maine

Maryland

Massachusetts

Michigan

Minnesota

Mississippi

Missouri

Montana

Nebraska

Nevada

New Hampshire

New Jersey

New Mexico

New York

North Carolina

North Dakota

Ohio

Oklahoma

Oregon

Pennsylvania

Rhode Island

South Carolina

South Dakota

Tennessee

Texas

Utah

Vermont

Virginia

Washington State

West Virginia

Wisconsin

Wyoming

**Election Guide**

WHO'S WINNING
The Upshot presidential forecast, updated daily.

LATEST POLLING
Averages of the national and swing state polls.

DELEGATES
The full delegate count.

ANSWERING YOUR QUESTIONS
How election results really work.

CANDIDATES ON THE ISSUES
What they're saying about 2016's biggest issues.

FACT CHECKING THE CANDIDATES
Who's telling the truth?

© 2016 The New York Times Company

© 2016 The New York Times Company | Contact Us | Work With Us | Advertise | Your Ad Choices | Privacy | Terms of Service | Terms of Sale

Site Map | Help | Site Feedback | Subscriptions