STATE OF MINNESOTA

IN SUPREME COURT

A13-1028

Court of Appeals                                                      Wright, J.
                                            Concurring, Anderson and Stras, JJ.
                                                    Concurring, Lillehaug, J.

Ethan Dean, et al.,

                    Appellants,

vs.                                                         Filed:  August 5, 2015
                                                       Office of Appellate Courts
City of Winona,

                    Respondent.
                    _____

Anthony B. Sanders, Lee U. McGrath, Institute for Justice, Minneapolis, Minnesota; and

Diana K. Simpson, Institute for Justice, Arlington, Virginia, for appellants.

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota, for respondent.

Teresa Nelson, Saint Paul, Minnesota, for amicus curiae American Civil Liberties Union of Minnesota.

Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, Minnesota; and

Daniel E. Frank, Sutherland Asbill & Brennan LLP, Washington, D.C., for amici curiae The Cato Institute and The Minnesota Free Market Institute at the Center of the American Experiment.

Eileen M. Wells, City Attorney, Linda Boucher Hilligoss, Assistant City Attorney, Mankato, Minnesota, for amicus curiae City of Mankato.

Terry L. Adkins, City Attorney, Rochester Minnesota, for amicus curiae City of Rochester.

1

Samuel J. Clark, City Attorney, Gerald T. Hendrickson, Deputy City Attorney, Saint Paul, Minnesota, for amicus curiae City of Saint Paul.

Susan L. Naughton, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

Bradley J. Boyd, Sarah B. Bennett, Christopher P. Renz, Thomsen & Nybeck, P.A., Bloomington, Minnesota, for amicus curiae Minnesota Association of Realtors.

Jarod M. Bona, Bona Law P.C., La Jolla, California; and

Aaron R. Gott, Minneapolis, Minnesota, for amicus curiae Minnesota Vacation Rental Association.

_____

S Y L L A B U S

Dismissal is appropriate when a case is moot and no exception to our mootness doctrine applies.

Appeal dismissed.

O P I N I O N

WRIGHT, Justice.

Appellants Ethan Dean, Holly Richard, and Ted and Lauren Dzierzbicki brought this action, challenging a rental ordinance enacted by respondent City of Winona (the City). The ordinance, referred to as the "30-percent rule," limits the number of lots on a block in certain areas of the City that are eligible for certification as rental properties. Appellants assert that the 30-percent rule is a zoning law that exceeds the City's power authorized by Minn. Stat. § 462.357 (2014).

Appellants also contend that the 30-percent rule violates their rights to equal protection and substantive due process guaranteed by the Minnesota Constitution. On

2

cross-motions for summary judgment, the district court granted summary judgment to the City. The court of appeals affirmed, concluding that the adoption of the ordinance was a valid exercise of the City's police power and that appellants did not meet their burden of establishing that the ordinance is unconstitutional. After we granted appellants' petition for review, the City moved to dismiss for lack of jurisdiction, asserting that the case had become moot while on appeal. We conclude that the challenge to the ordinance does not present a justiciable controversy because appellants no longer have an interest in the outcome of the litigation. We, therefore, decline to reach the merits of appellants' claims and dismiss the appeal.

I.

At the heart of this dispute is the City's policy limiting the number of rental licenses available to homeowners in Winona. The City requires its homeowners to obtain rental licenses before they are permitted to rent their properties to tenants. In 2005, the City enacted the 30-percent rule, currently codified as Winona, Minn., Code § 33A.03 (2014), to regulate the density of rental properties in certain residential zones. The purpose of the rule, when enacted, was to decrease conversions from owner-occupied properties to rental properties, which, the City reasoned, would decrease crime and nuisance complaints and improve the quality of life in Winona. In residential zones subject to the 30-percent rule, homeowners generally may not obtain rental licenses for their properties if more than 30 percent of the lots on that block already are licensed as

3

rental properties. For example, on a 12-property block subject to the rule, only four lots may be licensed as rental properties.[1]

Appellants sued the City in 2011 after each sought and was denied a standard rental license. Appellant Holly Richard purchased a house in Winona in December 2006. When she attempted to obtain a rental license in 2009, the City erroneously told her that no licenses were available for her block. After Richard filed the lawsuit, the City issued a standard rental license to her. Appellant Ethan Dean bought a house near Winona State University in 2006. He rented his house without a license after his job required him to work in Iraq in 2009. The City granted Dean a temporary, nontransferable rental license in 2010, but declined to issue a standard rental license. In November 2012, after failing to sell the home, Dean transferred it to Wells Fargo Bank by warranty deed to avoid foreclosure. Appellants Ted and Lauren Dzierzbicki purchased a house in 2007 near the university for their daughter and student renters to live in while attending college. After the Dzierzbickis learned that they could not rent the home as planned because of the 30-percent rule, they put the house on the market in December 2009.

The parties filed cross-motions for summary judgment in January 2013. In their cross-motion, appellants sought a declaratory judgment that the 30-percent rule violates their equal-protection, procedural-due-process, and substantive-due-process rights under

---

[1] An exception exists for blocks in which more than 30 percent of the properties were licensed as rental properties before the rule took effect in 2005. Winona, Minn., Code § 33A.03(i)(i). Homeowners who had rental licenses before the 30-percent rule was enacted may continue to renew those licenses, even if the percentage of rental property on their blocks is above 30 percent. *Id.*

the Minnesota Constitution. Appellants also alleged that the ordinance exceeds the City's zoning power under Minn. Stat. § 462.357, Minnesota's zoning enabling statute. *See id.* (describing a municipality's authority for zoning and the limitations of that authority). Specifically, appellants claimed that the ordinance is unlawful under section 462.357 because it impermissibly regulates the ownership or occupancy of property, rather than the use of property. Appellants sought injunctive relief and nominal damages. The district court granted the City's motion for summary judgment in April 2013, concluding that the 30-percent rule is not unconstitutional and that the City had authority to enact it. The court of appeals affirmed. *Dean v. City of Winona*, 843 N.W.2d 249, 263 (Minn. App. 2014).

The Dzierzbickis sold their house in March 2014, one month after the court of appeals issued its decision. At that time, the Dzierzbickis were the only appellants still seeking a rental license from the City. Appellants filed a petition for review, which we granted in May 2014. After we granted appellants' petition for review, the City moved to dismiss the appeal for lack of jurisdiction.

II.

We first consider the City's motion to dismiss. The City argues that dismissal is warranted because the case is not justiciable and nominal damages cannot be recovered under the Minnesota Constitution.

Justiciability is an issue of law, which we review de novo. *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 337 (Minn. 2011). In the context presented here, the jurisdictional question is one of mootness. *See In re Schmidt*, 443 N.W.2d 824, 826

5

(Minn. 1989) (observing that when we are unable to grant relief, the issue raised is deemed moot). The mootness doctrine is not a mechanical rule that is automatically invoked whenever the underlying dispute between the parties is settled or otherwise resolved. *State v. Rud*, 359 N.W.2d 573, 576 (Minn. 1984). Rather, it is a "flexible discretionary doctrine." *Id.* Mootness has been described as " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). An appeal should be dismissed as moot when a decision on the merits is no longer necessary or an award of effective relief is no longer possible. *In re Minnegasco*, 565 N.W.2d 706, 710 (Minn. 1997).

Appellants acknowledge that they do not have a current interest in the litigation beyond their claim for nominal damages under the Minnesota Constitution and that their claims for declaratory and injunctive relief are moot. Nonetheless, they argue that we should apply two discretionary exceptions to our mootness doctrine. First, appellants maintain that the issues raised are capable of repetition, yet likely to evade review. *See Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn. 2005). Second, appellants contend that this case is "functionally justiciable" and of "statewide significance." *See Rud*, 359 N.W.2d at 576. The City counters that neither exception applies. We address each argument in turn.

A.

We begin by considering the exception to the mootness doctrine for issues that are capable of repetition, yet evade review. This two-pronged exception applies to issues that are likely to reoccur, but also would continue to evade judicial review. *Kahn*, 701 N.W.2d at 821. These circumstances exist when there is a reasonable expectation that a complaining party would be subjected to the same action again *and* the duration of the challenged action is too short to be fully litigated before it ceases or expires. *Id.*

This case does not meet the "evading-review" prong of the exception because the City's enforcement of the ordinance is ongoing. The constitutionality of the 30-percent rule is not an issue that, by its character, is "too short to be fully litigated prior to its cessation or expiration." *Id.* (citation omitted); *see State v. Brooks*, 604 N.W.2d 345, 348 (Minn. 2000) (noting that future defendants might have "no remedy" if the case were not decided because "[m]ost pretrial bail issues are, by definition, short-lived"). Traditionally, cases that have been found to evade review involve disputes of an inherently limited duration, such as prior restraints on speech, *see Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546-47 (1976) (holding that a judge's order limiting the press's reports about a trial would escape judicial scrutiny because such orders would always expire before appellate review), and short-term mental-health confinement orders, *see In re Blilie*, 494 N.W.2d 877, 879-81 (Minn. 1993) (concluding that the issue of whether plaintiff's treatment by neuroleptic medication upon her guardian's consent was constitutional was capable of repetition yet evaded review because, although plaintiff had been discharged from state custody, she could again be subjected to 90 days of treatment

7

with the medication if her guardian admitted her to a treatment center); *State ex rel. Doe v. Madonna*, 295 N.W.2d 356, 361 (Minn. 1980) (reviewing the constitutionality of three-day-hold orders for mentally ill appellants who were no longer subject to confinement at the time of their challenge).

The time frame of this case makes clear that a challenge to the 30-percent rule is not, by definition, "short-lived." *Brooks*, 604 N.W.2d at 348. The last of the property owners seeking a rental license here sold their property after the court of appeals' opinion was issued and shortly before we granted appellants' petition for further review. Appellants' case had been initiated three years earlier, a duration that typically would provide ample time for judicial review. In fact, if appellants had pleaded additional claims or joined plaintiffs while their case was pending before the district court, this case may have reached us before becoming moot. Because there is nothing about this case that is of inherently limited duration, this dispute is not capable of repetition, yet evading review.

B.

We have the discretion to consider a case that is technically moot when the case is "functionally justiciable" and presents an important question of "statewide significance that should be decided immediately." *Rud*, 359 N.W.2d at 576. "A case is functionally justiciable if the record contains the raw material (including effective presentation of both sides of the issues raised) traditionally associated with effective judicial [decision-making]." *Id.* Although the record here is well-developed, this case does not present an urgent question of statewide significance.

8

We apply this exception narrowly. In *Rud*, for example, the issue was whether defendants accused of sexual abuse of children should be allowed to call child witnesses and victims at a hearing on a motion to dismiss criminal charges. *Id.* at 575. The court of appeals held that defendants had a limited right to call the children as witnesses, depending on several factors. *Id.* at 577. After we granted the State's petition for further review, the State dismissed the charges. *Id.* at 576. We proceeded with the case, however, because "a failure to decide [the issues when presented] could have a continuing adverse impact in other criminal trials." *Id.* Had we not decided the substantive issue in *Rud* immediately, the court of appeals' holding, which was erroneous in light of our decision in *State v. Florence*, 306 Minn. 442, 239 N.W.2d 892 (1976), could have resulted in the broad use of probable cause hearings as " 'a substitute for disclosure and discovery.' " *Rud*, 359 N.W.2d at 578 (quoting *Florence*, 306 Minn. at 450, 239 N.W.2d at 898).

Other instances in which we have found cases to be functionally justiciable also involved matters of statewide significance. In *Jasper v. Commissioner of Public Safety*, for example, we concluded that the proper approval by the Commissioner of Public Safety of a breath-testing instrument for suspected impaired drivers was an issue of statewide significance because the model was "the only breath-testing instrument currently in use in this state and there [had] been substantial litigation in the district courts as to whether the instrument was properly approved." 642 N.W.2d 435, 439 (Minn. 2002); *see also Kahn*, 701 N.W.2d at 823 (reaching the merits on a challenge to election procedures in Minneapolis because the procedures were similar to those used in

9

other Minnesota cities, impacting almost 14 percent of the state's population). Similarly in *Brooks*, the issue of cash-only bail orders reached our court a second time within one year after we dismissed *State v. Arens*, 586 N.W.2d 131 (Minn. 1998), as moot. *See* 604 N.W.2d at 348. We reached the merits in *Brooks* because the failure to do so posed the risk of creating "a class of defendants with constitutional claims but no remedy." *Id.*

Most recently, in *In re Guardianship of Tschumy*, we addressed whether a court-appointed guardian may consent to removing a ward from life support, even though the issue was technically moot because the ward's life-support systems had been disconnected as authorized by a district court order. 853 N.W.2d 728, 741 (Minn. 2014) (plurality opinion). We reached the merits in part because the central issue, whether a guardian needs prior court approval to consent to the removal of life-sustaining treatment, implicated the State's *parens patriae* power "to protect 'infants and other persons lacking the physical and mental capacity to protect themselves,' " *id.* at 740 (quoting *In re Pratt*, 219 Minn. 414, 422, 18 N.W.2d 147, 152 (1945)), and because more than 12,000 Minnesotans were wards under State supervision and a decision was needed to "clarify for the guardians and their wards the scope of the guardians' authority to make one of life's most fundamental decisions," *id*.

This case does not present the urgency or significance that underpinned *Jasper*, *Rud*, and *Tschumy*. The decision of the court of appeals does not affect the efficiency and validity of criminal proceedings across the state, for example, nor do the issues presented involve a special area of law or vital "issues of life and natural death." *Tschumy*, 853 N.W.2d at 740 (plurality opinion). Moreover, there is no inherent limitation on the time

10

available for appeal as there was for cash-only bail orders in *Brooks*, 604 N.W.2d at 348.

In sum, this case does not present an issue that must "be decided immediately." *Rud*, 359

N.W.2d at 576.

The right to rent one's property is an important property interest. But this case

does not present the urgency and broad impact that were present in cases determined to

be functionally justiciable and of statewide significance that required an immediate

decision. Other municipalities impose rental limitations. However, they do not operate

in an identical fashion.[2] When, as here, the issues presented are limited to the

homeowners of one municipality, the case does not present the urgency and impact that

were present in other cases that we have found functionally justiciable and of statewide

significance. Accordingly, we decline to apply this limited exception here.

## III.

Appellants also maintain that this case is not moot because they seek nominal

damages based on an implied cause of action under the Remedies Clause of the

---

[2] At least three other municipalities have enacted similar percentage-based rental ordinances with varying limitations on rental property. *See, e.g.*, Mankato, Minn., Code § 5.42, subd. 20 (2014) (requiring additional procedures for new owners of an already licensed property to maintain a rental license and imposing a 25-percent rental cap); Northfield, Minn., Code § 14-97 (2015) (requiring additional procedures for a new owner of an already licensed property to obtain a new license and imposing a 20-percent rental cap); W. Saint Paul, Minn., Code, § 435.05, subd. 11 (2014) (disallowing the transfer of licenses to new owners and imposing a 10-percent rental cap). Additionally, the circumstances under which these ordinances were enacted vary and, when challenged, require independent consideration by a district court.

Minnesota Constitution.[3]  *See* Minn. Const. art. I, § 8.   Under this theory, appellants contend that the Remedies Clause provides an independent cause of action for constitutional violations.[4]  Arguing that they seek nominal damages under this cause of action, appellants contend that this case remains a live controversy.

However, appellants raised their "implied cause of action" theory for the first time only after their appeal had reached our court.  Appellants referenced the Remedies Clause in their second amended complaint as a jurisdictional basis for declaratory and injunctive relief, but they never advanced a claim or an argument for nominal damages at the district court founded on the Remedies Clause.  Appellants' jurisdictional allegations tied *only* their claims for declaratory and injunctive relief to the Remedies Clause.  "It is well established that where a plaintiff litigates his case on one theory only, he is precluded

---

[3]      The text of the Remedies Clause provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

Minn. Const. art. I, § 8.

[4]      In two section headings of their response to the City's motion to dismiss, appellants explicitly state that they seek a private cause of action under the Remedies Clause.  Appellants also argue that "the Minnesota Constitution, through its Remedies Clause, provides a cause of action for constitutional torts by which [appellants] are entitled to nominal damages," and state that the "Remedies Clause protects rights . . . by providing an independent basis for seeking relief, i.e., a private cause of action."  Clearly, appellants are requesting that we recognize a private cause of action under the Remedies Clause.   Contrary to the concurrence's characterization, this is not merely our "understanding" of appellants' position—rather, it is the express argument that appellants make multiple times in their response to the City's motion to dismiss.

from asserting new theories on appeal." *John W. Thomas Co. v. Carlson-LaVine, Inc.*, 291 Minn. 29, 33, 189 N.W.2d 197, 200 (1971). In particular, the appellants did not plead a cause of action for nominal damages under the Remedies Clause in their complaint. The Minnesota Rules of Civil Procedure require that a civil complaint "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Minn. R. Civ. P. 8.01. A complaint should put a "defendant on notice of the claims against him." *Mumm v. Mornson*, 708 N.W.2d 475, 481 (Minn. 2006). Here, appellants pleaded constitutional claims of equal protection, substantive due process, and procedural due process, and made a statutory claim that the City exceeded its zoning authority. While appellants' prayer for relief included a generalized request for "nominal damages of $1.00 for violations of their constitutional rights," that request, untethered to a specific claim or constitutional provision, was not enough to implicate the Remedies Clause. In other words, it did not put respondents on notice of the cause of action for nominal damages under the Remedies Clause, which appellants now present to our court.

Only on June 26, 2014, in response to respondent's motion to dismiss on mootness grounds before our court, did appellants advance the argument that their request for nominal damages presented an implied cause of action under the Remedies Clause of the Minnesota Constitution. That argument came too late. Amendments to pleadings, which "range from a simple clarification to a whole new theory of the case," *Nw. Nat'l Bank of Minneapolis v. Shuster*, 388 N.W.2d 370, 372 (Minn. 1986), generally must occur before the action has been placed on the trial calendar, unless the amending party is given leave to amend by the district court or the adverse party, *see* Minn. R. Civ. P. 15.01 (stating

13

that a party may amend a pleading by leave of court, and amendments should be freely granted when justice so requires); *see also Shuster*, 388 N.W.2d at 372 ("[F]airness demands recognition of the right to respond and to raise any defense to the newly pleaded material without seeking the court's permission.").

Therefore, we decline to consider appellants' Remedies Clause theory at this juncture. We do not reach constitutional claims unless required to do so. *See Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010). Under the facts and circumstances of this case, the alleged harm to appellants' interests has ceased. There is no live case or controversy regarding the claims that appellants actually pleaded in their complaint. In short, this case is moot. We will not consider issues of constitutional interpretation in a case that we have no power to decide.

IV.

In conclusion, appellants' claims are moot. Because no exception to our mootness doctrine applies, we grant the City's motion to dismiss.

Appeal dismissed.

14

# CONCURRENCE

ANDERSON, Justice (concurring).

I concur in the result.


STRAS, Justice (concurring).

I join in the concurrence of Justice Anderson.

C O N C U R R E N C E

LILLEHAUG, Justice (concurring).

I agree that the case must be dismissed as moot.  I join Parts I and II and the result of the opinion of the court, departing only from the analysis in Part III.

Part III is premised on the majority's understanding that appellants now seek nominal damages based on an implied cause of action under the Remedies Clause.  Based on this understanding, and because the Remedies Clause was not pleaded as a cause of action, the majority avoids the question of whether the prayer for nominal damages saves the case from mootness.

As I understand appellants' position, they do not allege, and have never alleged, that their *injury or wrong*—their cause of action—is based on the Remedies Clause.  Instead, I understand appellants to seek nominal damages as a *remedy* for alleged injury or wrong to their Minnesota constitutional rights of equal protection, substantive due process, and procedural due process.

Analytically, then, we cannot avoid appellants' argument that, even if their three constitutional claims otherwise have been mooted—making equitable and declaratory relief unavailable—the case lives on because they prayed for "nominal damages of $1.00."[1]  Their novel theory is that the Remedies Clause requires the availability of a nominal damages remedy.  I disagree.

---

[1]     Nominal damages are "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated."  *Black's Law Dictionary* 473 (10th ed. 2014).

Appellants have not drawn to our attention any Remedies Clause precedent that resuscitates an otherwise moot case, and I am aware of none. And I see nothing in the Remedies Clause as commanding (at least in the absence of implementing legislation) that the judicial remedy of purely nominal damages be available against a municipality.

This is not a situation where appellants had no remedy whatsoever. Equitable and declaratory relief, which appellants sought in their prayer for relief, were available. Such relief became unavailable because of appellants' own strategic litigation choices. At no point did appellants seek to amend their complaint to add plaintiffs with live claims. Nor did appellants seek expedited relief. Minnesota procedure provides for temporary remedies such as restraining orders and injunctions, *see* Minn. R. Civ. P. 65, and declaratory relief, which, "liberally construed and administered" under Minn. Stat. § 555.12 (2014), may be secured by "speedy hearing," Minn. R. Civ. P. 57.

Nor did appellants invoke Minnesota's constitutional and statutory remedies for the municipal taking, destruction, or damage of private property. *See* Minn. Const., art. I, § 13 ("Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."); Minn. Stat. ch. 117 (2014) (governing eminent domain); *Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 42 (Minn. 1991) ("Once a 'taking' is found, compensation is required by operation of law"). Nor did appellants seek compensation for actual damages; rather, they sued only the municipality. *See Thiede v. Town of Scandia Valley,* 217 Minn. 218, 231-33, 14 N.W.2d 400, 408-09 (1944) (damages awarded against individual defendants for eviction in violation of Minnesota Constitution, but, "in the absence of statute," township had no liability for

damages).  Nor did appellants plead any federal constitutional claim, whether under 42 U.S.C. § 1983 (2012) or otherwise.  *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (nominal damages available under section 1983).

As Part III notes, we do not reach the merits of constitutional claims unless we are required to do so.  *See Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010).  In the circumstances of this case, the Remedies Clause does not require that we reach the merits.