# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1199

In the Matter of the Welfare of the Child of: K. O. and D. W.,
Commissioner of Human Services, Legal Custodian.

**Filed February 26, 2024**
**Reversed; motion denied**
**Schmidt, Judge**

Ramsey County District Court
File No. 62-JV-18-118

Richard D. Snyder, W. Thomas Wheeler, Fredrikson & Byron, P.A., Minneapolis, Minnesota; and

Katie Mathurin, Children's Law Center of Minnesota, St. Paul, Minnesota; and

Chad Snyder, Rubric Legal, LLC, Minneapolis, Minnesota (for appellant S.D.W.-O.)

John J. Choi, Ramsey County Attorney, L. Michelle Thompson, Assistant County Attorney, St. Paul, Minnesota (for respondent Ramsey County Social Services Department)

Patty Taylor, St. Paul, Minnesota (guardian ad litem)

Considered and decided by Schmidt, Presiding Judge; Segal, Chief Judge; and Ross, Judge.

## SYLLABUS

Under Minnesota Statutes section 260C.181 (2022), a child who is taken into custody pursuant to Minnesota Statutes section 260C.175 (2022) and has not been alleged to be delinquent, may be held in a secure detention facility for no more than 24 hours.

**OPINION**

**SCHMIDT**, Judge

The Commissioner of the Minnesota Department of Human Services took legal custody of, and guardianship over, appellant-child S.W.-O. after a district court terminated parental rights and adjudicated him to be a child in need of protection (CHIPS). After running from another placement, respondent Ramsey County Social Services Department (the county) placed S.W.-O. in the Ramsey County Juvenile Detention Center (JDC). S.W.-O. argues that the district court lacked authority to hold him at the JDC beyond the initial 24-hour period while the county tried to secure an appropriate placement. Because Minnesota Statutes section 260C.181, subdivision 2 required the district court to place S.W.-O. with his relative or in a shelter care facility, we reverse.

**FACTS**

Following a CHIPS adjudication and a termination of parental rights, the Commissioner of the Minnesota Department of Human Services took legal custody of, and guardianship over, S.W.-O. S.W.-O. has a "chronic history" of running from placements, having been in eighteen placements total.

On June 17, 2023, S.W.-O. left his placement without permission. At the county's request, the district court issued a warrant for immediate custody. After locating S.W.-O., the county held him at the JDC starting on July 21, 2023.

On July 24, 2023, the district court held a hearing to review placement options for S.W.-O. At the hearing, the county stated that it had been working diligently, but "placement seems to be few and far between these days" because S.W.-O. required a

specialized placement with "chemical dependency treatment as well as psychiatric care." The county had secured a placement in Missouri on July 17, but S.W.-O. had run from his placement and his whereabouts were unknown at that time. The county hoped to have a new admission date for the Missouri facility "within the next week." Until the county could obtain a new admission date, it argued that the JDC was the least restrictive placement available given S.W.-O.'s history, which included running from multiple placements and a history of drug use.

S.W.-O.'s attorney opposed the placement in Missouri, explaining that S.W.-O. wished to be close to his family and support system in Minnesota. In the alternative, S.W.-O. requested placement with his biological mother, whose parental rights had been previously terminated, with out-patient treatment for chemical dependency and mental health. S.W.-O.'s attorney objected to S.W.-O.'s continued confinement at the JDC.

The district court approved placement in Missouri and granted the county's request to continue to confine S.W.-O. at the JDC until a space became available at the Missouri treatment center. The district court rejected placing S.W.-O. with his biological mother, finding it was not a viable option because it had failed in the past.

On July 25, 2023, S.W.-O.'s attorney filed a motion requesting S.W.-O.'s immediate release from the JDC. S.W.-O.'s attorney argued that Minnesota Statutes section 260C.181, subdivision 2 allowed holding S.W.-O. at the JDC for only 24 hours.

At a July 27, 2023 hearing, the county explained that after S.W.-O. was taken to the JDC on July 21, staff took him to the hospital because they believed he was under the influence of methamphetamine. The county also explained that placing S.W.-O. at the

3

Missouri facility had been delayed and that the county was actively searching for other options. But the county candidly conceded, "I don't think we have any good answers here today, to be really honest and frank about it."

S.W.-O.'s attorney reiterated the argument that section 260C.181 did not authorize holding a nondelinquent child at a detention facility for more than 24 hours. The guardian ad litem expressed concern for S.W.-O.'s safety and requested that the county consider a treatment center closer to home or placement with his biological mother.

In response to the arguments, the district court acknowledged that "unfortunately, this isn't the first time we've been in this situation" when a nondelinquent child had to wait in the JDC until a placement option could be secured. The district court stated:

> [I]f I'm making that determination, I am still guided by what I believe, as the Court, to be in the best interest of the child. And while that child is . . . under the jurisdiction of this Court, then I'm going to make decisions that I think are in the best interest of the child. If I have a kid that continually runs and may involve him or herself in conduct that is injurious to either him or herself or potentially the public, you know, I just have a hard time ignoring that. I appreciate your position. He's not in custody as a result of delinquency, at least not for committing an offense for which he's been charged. However, the agency is charged with temporary custody of the child. That responsibility comes with doing what is in the best interests of that child. To suggest that the Court should simply allow the child out to the street, knowing full well the end result of that, that's kind of a tall order.

The district court continued to hold S.W.-O. at the JDC and scheduled another hearing.

On August 3, 2023, the district court held a hearing on S.W.-O.'s motion for release from the JDC. S.W.-O.'s attorney again argued that the statute did not authorize holding S.W.-O. at the JDC beyond the initial 24-hour period. The county responded that

4

subdivision 2 of section 260C.181 empowered the court to hold S.W.-O. at the JDC but acknowledged that the JDC was not "the ideal placement."

The district court told S.W.-O. that "the reality of this situation . . . is that we want to get you the help that you need while you are still the responsibility of the State." The court then ruled that it had the statutory authority to hold S.W.-O. at the JDC. The district court noted it must act in S.W.-O.'s best interests and that the JDC constituted "the least restrictive way to ensure [S.W.-O.'s] well-being" given his history of running and "given the fact that there will be a placement for him at a facility that is well equipped to provide him with the services that he does need."

On August 4, 2023, the district court issued an order denying S.W.-O.'s motion for immediate release from the JDC. The court concluded it had authority to continue to hold S.W.-O. at the JDC as it was in his best interests and constituted the "least restrictive setting" consistent with S.W.-O.'s health and welfare.

On August 14, 2023, S.W.-O.'s attorney filed a notice of appeal from the August 4, 2023 order. Six days later, the county transported S.W.-O. to an out-of-state residential treatment facility, by which time S.W.-O. had spent 31 days—from July 21 to August 20—at the JDC before being transferred.

## ISSUES

I.     **Does an exception to the mootness doctrine apply when the child is no longer being held at the JDC?**

II.    **Does Minnesota Statutes section 260C.181, subdivision 2, permit the state to hold a nondelinquent child for longer than 24 hours at a secure detention facility?**

## ANALYSIS

I.     **The issue is moot, but is capable of repetition yet evades review.**

The county moved to dismiss this appeal as moot because S.W.-O. was moved from the JDC to a shelter care facility in Missouri. *See* Minn. Stat. § 260C.007, subd. 30 (2022) (defining shelter care facility). S.W.-O. opposes the motion to dismiss.

"The existence of a justiciable controversy is a prerequisite to adjudication." *Izaak Walton League of Am. Endowment, Inc. v. State, Dep't of Nat. Res.*, 252 N.W.2d 852, 854 (Minn. 1977). In general, "Minnesota courts may only hear actual cases and controversies." *Winkowski v. Winkowski*, 989 N.W.2d 302, 308 n.7 (Minn. 2023) (citation omitted). A moot case is generally nonjusticiable. *Snell v. Walz*, 985 N.W.2d 277, 283 (Minn. 2023). We must dismiss an issue on appeal as moot "when a decision on the merits is no longer necessary or an award of effective relief is no longer possible." *Dean v. City of Winona*, 868 N.W.2d 1, 5 (Minn. 2015). We generally "decline to hear moot cases because courts do not issue advisory opinions or decide cases merely to make precedents." *Winkowski*, 989 N.W.2d at 308 n.7 (quotation omitted). Appellate courts decide de novo both whether a question is justiciable and whether a question is moot. *Dean*, 868 N.W.2d at 4 (justiciability); *In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999) (mootness).

6

The issue presented in this appeal is whether Minnesota Statutes section 260C.181, subdivision 2 authorizes a child to be held in a secure detention facility. The parties agree that after S.W.-O. appealed, the county transferred him out of the JDC to a facility in Missouri.[1] Since we cannot grant relief from the district court's order that S.W.-O. be held at the JDC, the issue is moot.

We generally will not address a moot issue. *Winkowski*, 989 N.W.2d at 308. But the mootness doctrine is not "a mechanical rule that is automatically invoked whenever the underlying dispute between the parties is settled or otherwise resolved. It is instead a flexible discretionary doctrine that is subject to some limited exceptions." *Id.* (quotations omitted). We cannot consider the merits of a moot issue unless one of the recognized exceptions to the mootness doctrine applies. *Snell*, 985 N.W.2d at 284.

The Minnesota Supreme Court has recognized certain circumstances in which courts may consider an otherwise moot issue, including that the harm is capable of

---

[1] An appellate court is generally limited to the record that was before the district court when it made the decision being appealed. *See* Minn. R. Civ. App. P. 110.01 (defining the record on appeal); *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). If, however, an event occurs while an appeal is pending that (allegedly) renders a decision on the merits by this court unnecessary or effective relief impossible, that event is—by definition—outside the record on appeal as defined by rule 110.01. *See In re Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn. 1997) (noting "the general rule is that when, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot"). The mootness question in this case arises because S.W.-O. was transferred out of the JDC after the notice of appeal had been filed. Thus, limiting our review to the record before the district court would preclude us from considering the event prompting the assertion of mootness. For purposes of addressing the question of mootness at issue here, we must look beyond the record presented to the district court. *See Plowman v. Copeland, Buhl & Co., Ltd.*, 261 N.W.2d 581, 584 n.3 (Minn. 1977) (stating "courts have used the power to look beyond the record for purposes of determining mootness" (citations omitted)).

repetition yet evades review. *Id.* at 284, 288. The capable-of-repetition yet-evades-review exception has two prongs: "[1] there is a reasonable expectation that a complaining party would be subjected to the same action again *and* [2] the duration of the challenged action is too short to be fully litigated before it ceases or expires." *Dean*, 868 N.W.2d at 5 (emphasis in original). If the exception applies, we have discretion as to whether to apply the exception and whether to address the question. *See id.* at 4-5; *Limmer v. Swanson*, 806 N.W.2d 838, 839 (Minn. 2011).

The county argues this exception does not apply because S.W.-O. is no longer at the JDC and there is no reasonable expectation that he will be subjected to a temporary hold at the JDC in the future. S.W.-O. counters that he and other children who are not alleged to be delinquent could be held at the JDC and that such conduct would evade review because the hold is generally temporary. S.W.-O. has the better argument.

Relying heavily on *State ex rel. Young v. Schnell*, 956 N.W.2d 652 (Minn. 2021), S.W.-O. argues that both prongs of the capable-of-repetition yet-evading-review exception to the mootness doctrine are met. In *Young*, the Minnesota Department of Corrections (DOC) revoked probation for Young, a Level III predatory offender, seven times and returned him to prison each time. *Young*, 956 N.W.2d at 658-59, 663. While Young was in prison, a district court denied his petition for habeas corpus. *Id.* at 661. After Young filed his appeal from the denial of his habeas petition, the DOC conditionally released him and then argued the appeal was moot. *Id.* at 661-62. The Minnesota Supreme Court held that the first prong of the exception was met because Young's conditional release had been revoked seven times and his placement options were limited, which "create[d] a reasonable

8

expectation that Young's conditional release will be revoked again for his inability to complete residential programming." *Id.* at 663. For the second prong, the supreme court determined that "[a]ny future challenge by Young . . . could easily be mooted by the Department's decision to release him from confinement, rendering the challenged action too short to be fully litigated." *Id.* The supreme court concluded that the issue, even though moot, merited consideration as it was capable of repetition yet evaded review. *Id.*

We agree that *State ex rel. Young v. Schnell* guides our analysis. First, there is a reasonable expectation that S.W.-O. may be held at the JDC for more than 24 hours again in the future. S.W.-O. has already been held at the JDC beyond 24-hours on two occasions despite no allegation that he is delinquent; S.W.-O. is a chronic flight risk, having been in 18 placements; and suitable placements for him are difficult to find given his particular therapy and treatment needs. Second, the issue is capable of evading review due to the relatively short periods of time that S.W.-O. has been held at the JDC, the typical duration of an appeal, and the delays repeatedly encountered in obtaining appropriate placements for S.W.-O. As a result, we conclude that the issue is capable of repetition yet evades review, and we elect to exercise our discretion to consider the merits of this appeal under this exception. *Young*, 956 N.W.2d at 663; *see also State ex rel. L.E.A. v. Hammergren*, 294 N.W.2d 705, 706 (Minn. 1980) (holding issue regarding propriety of juveniles being held in a secure facility was rendered moot because juveniles were released from the secure facility, but deciding the issue because it was "capable of repetition but evading review"). The county's motion to dismiss this appeal as moot is denied.

We now turn to the merits of the appeal.

**II.      Minnesota Statutes section 260C.181, subdivision 2, does not authorize holding a nondelinquent child for longer than 24 hours at a secure detention facility.**

S.W.-O. argues that the district court erred by denying his motion for release because Minnesota Statutes section 260C.181, subdivision 2, does not authorize holding a nondelinquent child in a secure detention facility for more than 24 hours. The county responds that subdivision 2 does not prohibit holding a child at the JDC if that environment is the least restrictive setting that meets the child's health and welfare needs.

The competing statutory interpretation arguments raise a question of law, which we review de novo. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). The goal of interpreting a statute is to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 (2022). First, we examine the text of the statute to determine whether the language is ambiguous. *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017). If the statutory language is clear and free of ambiguity, we enforce the plain language of the statute and do not explore its spirit. Minn. Stat. § 645.16; *see In re Welfare of Child of S.B.G.*, 991 N.W.2d 874, 884 (Minn. 2023).

In interpreting statutory language, we give words and phrases their plain and ordinary meaning. *J.J.P.*, 831 N.W.2d at 264. Further, we read a statute as a whole and give effect to all of its provisions. *Save Lake Calhoun v. Strommen*, 943 N.W.2d 171, 177 (Minn. 2020). We neither read words in isolation, nor do we "add words or phrases to unambiguous statutes or rules." *Id.* (quotations omitted).

The statute at issue provides:

> **Subdivision 1. Temporary custody.** A child taken into custody pursuant to section 260C.175 *may be detained for up to 24 hours in a shelter care facility, secure detention facility, or*, if there is no secure detention facility available for use by the county having jurisdiction over the child, *in a jail or other facility for the confinement of adults* who have been charged with or convicted of a crime in quarters separate from any adult confined in the facility which has been approved for the detention of juveniles by the commissioner of corrections. *At the end of the 24-hour detention any child requiring further detention may be detained only as provided in this section.*

> **Subd. 2. Least restrictive setting.** Notwithstanding the provisions of subdivision 1, if the child had been taken into custody pursuant to section 260C.175, subdivision 1, clause (1) or (2), item (ii), and is not alleged to be delinquent, the child *shall be detained in the least restrictive setting consistent with the child's health and welfare and in closest proximity to the child's family as possible. Placement may be with a child's relative or, if no placement is available with a relative, in a shelter care facility.* The placing officer shall comply with this section and shall document why a less restrictive setting will or will not be in the best interests of the child for placement purposes.

> **Subd. 3. Placement.** If the child had been taken into custody and detained as one who is alleged to be in need of protection or services under section 260C.007, subdivision 6, clause (13) or (14), by reason of having been adjudicated, in need of protection or services under section 260C.007, subdivision 6, clause (13) or (14), or conditionally released by the juvenile court without adjudication, has violated probation, parole, or other field supervision under which the child had been placed as a result of behavior described in this subdivision, *the child may be placed only in a shelter care facility*.

Minn. Stat. § 260C.181 (emphasis in italics added).

We agree with the parties that subdivision 1 is unambiguous. Subdivision 1 allows the state to detain a nondelinquent child, who was taken into custody pursuant to section 260C.175,[2] for "up to 24 hours in a shelter care facility, secure detention facility," or certain adult facilities. *Id.* at subd. 1. The JDC—as a physically restrictive facility—qualifies as a "secure detention facility." *See* Minn. Stat. § 260C.007, subd. 29 ("'Secure detention facility' means a physically restricting facility, including but not limited to a jail, a hospital, a state institution, a residential treatment center, or a detention home used for the temporary care of a child pending court action."). The final sentence of subdivision 1 provides that after the 24-hour detention period ends, a child "may be detained only as provided in this section." Minn. Stat. § 260C.181, subd. 1.

The parties do not dispute that subdivision 2 provides for placement options for nondelinquent youth who need to be detained beyond 24 hours. Minn. Stat. § 260C.181, subd. 2.[3] The parties further agree that the subdivision indicates that a child must be "detained in the least restrictive setting consistent with the child's health and welfare and in closest proximity to the child's family as possible." *Id.* The parties part ways on their interpretation of the sentence: "Placement may be with a child's relative or, if no placement is available with a relative, in a shelter care facility." *Id.*

---

[2] The parties do not dispute that S.W.-O. was taken into custody pursuant to section 260C.175.

[3] The parties agree that subdivision 2 applies to S.W.-O.'s 31 days at the JDC that were the genesis of this dispute.

S.W.-O. argues that subdivision 2 allows for one of two options: (1) placement with a relative or (2) placement in a shelter care facility. S.W.-O. contends that subdivision 2 does not "authorize a nondelinquent child to be held in a secured facility of any type," such as the JDC. We agree.

The plain language of subdivision 2 states that a child must be placed in the least restrictive setting that is either with a relative or in a shelter care facility.[4] *Id.* The legislature did not include "secure detention facility" as a location option after the initial 24-hour period, as provided in subdivision 1, has expired. *Id.* To include "secure detention facility" among the settings provided in subdivision 2 would add words to the statute, which we may not do. *See Save Lake Calhoun*, 943 N.W.2d at 177 ("[W]e do not add words or phrases to unambiguous statutes or rules." (quotations omitted)).

The county contends that the use of "may" and "or" in subdivision 2 affords the district court discretion to choose any placement, including at a secure detention facility, so long as the placement is "the least restrictive" alternative. But the county's proposed interpretation of the statute would render superfluous the sentence that states, "Placement may be with a child's relative or . . . in a shelter care facility." *See Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999) ("Whenever it is possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant."). That sentence would be unnecessary if, as the county argues, a district court had unlimited discretion in choosing

---

[4] A "'[s]helter care facility' means a physically unrestricting facility, such as but not limited to, a hospital, a group home, or a licensed facility for foster care, used for the temporary care of a child pending court action." Minn. Stat. § 260C.007, subd. 30.

the location where the child will stay.  The legislature's use of "may" and "or" affords the district court discretion in selecting between the options expressly listed:  a relative or a shelter care facility.  The discretionary language does not authorize the district court to choose a third option—a secure detention facility—as it is not expressly included in subdivision 2.  Since the county's reading would render the two stated alternatives superfluous, it is not a reasonable interpretation of the statute.

The legislature's use of the words "detained" and "placement" within subdivision 2 does not change our analysis.  The legislature has not defined either term, and the parties offer competing interpretations of their meanings.[5]  We note that the statute appears to use "detained" and "placement" interchangeably.  But any difference in the words is immaterial because the plain language of the statute—when read as a whole—demonstrates that the legislature designated specific locations where a nondelinquent child may be physically located.  In subdivision 1, for example, the legislature authorized a CHIPS child to be physically located in a:  "shelter care facility, secure detention facility, or . . . a jail or other facility for the confinement of adults[.]"  Minn. Stat. § 260C.181, subd. 1.  Similarly, in subdivision 3, the legislature provided only one option for certain CHIPS children:  "a shelter care facility."  *Id.* at subd. 3.  Like subdivisions 1 and 3, the legislature expressly designated locations in subdivision 2 where a nondelinquent child may be located: "with a . . . relative" or "in a shelter care facility."  *Id.* at subd. 2.  In selecting the location within

---

[5] After oral argument, we requested—and the parties filed—supplemental briefs on the significance, if any, of the legislature's use in subdivision 2 of the words "detained," "placement," and "placing."

14

subdivision 2, a county and a district court must account for "the least restrictive setting" available that is "in the closest proximity to the child's family as possible." *Id.* What a county and a district court cannot do is physically place a nondelinquent child in a secure detention facility for longer than 24 hours.

Subdivision 3 provides further support for our conclusion. The record in this case reflects that the county and the district court raised valid concerns that S.W.-O. had run from numerous placements and posed a danger to himself while on the run. In subdivision 3, the legislature addressed the situation of a child who is alleged to be, or has been adjudicated CHIPS as, "a runaway." *See* Minn. Stat. § 260C.181, subd. 3 (referencing Minn. Stat. § 260C.007, subd. 6 (13) (runaway)). In such circumstances, the legislature provided that a runaway CHIPS child "may be placed only in a shelter care facility." *Id.* If the legislature requires a CHIPS child who has been adjudicated a "runaway" to be placed *only* in "a shelter care facility" and not in a "secure detention facility," then logically a CHIPS child who has *not* been adjudicated a "runaway"—even if the facts would support such an adjudication—cannot be placed in a "secure detention facility." *See, e.g.*, *In re Welfare of L.J.C.*, 367 N.W.2d 101, 103 (Minn. App. 1985) (holding status offender cited for being a "runaway" may not be placed in a secure juvenile detention facility, even temporarily, while awaiting a post-adjudication placement).

We recognize that Minnesota counties have limited financial resources and limited options to place children—especially children with specific needs like S.W.-O.—in facilities with appropriate treatment plans. The district court and the county both took great care in this case to protect the best interests of this child. Indeed, based on this record,

15

S.W.-O. has experienced significant trauma in his young life and has demonstrated that he could be a danger to himself and others if he were to be released to a nonsecure placement while awaiting admission to an appropriate facility that can treat his specific needs.

Nonetheless, existing law does not allow the district court or the county to detain S.W.-O., or any other nondelinquent CHIPS child, in a secure detention facility beyond 24 hours. While our decision in this case may require substantial changes in practice for some Minnesota counties, we must follow the unambiguous statutory language. And "our task here is limited to interpreting the statutory [language] as enacted by the Legislature." *In re Welfare of J.B.*, 782 N.W.2d 535, 548 (Minn. 2010); *see also Amaral*, 598 N.W.2d at 384 ("When interpreting a statute, we may not disregard the letter of the law under the pretext of pursuing the spirit of the law."). Although the district court provided well-intentioned reasoning that temporarily holding S.W.-O. in a secure detention facility was in the best interests of this child, the statute does not authorize such a hold. Any amendment to the statute must come from the legislature, not the judiciary. *Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 213 (Minn. 2014) ("[T]he Legislature, not the judiciary, must be the reviser [of a statute].").

### DECISION

Because Minnesota Statutes section 260C.181, subdivision 2, does not authorize the district court to hold S.W.-O., a nondelinquent CHIPS child, in a "secure detention facility" for any length of time beyond the initial 24-hour period provided in subdivision 1, we must reverse the district court's order denying S.W.-O.'s motion for release.

**Reversed; motion denied.**