*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0963**

In re: The Matter of T. M. and the Commissioner Jodi Harpstead.

**Filed March 18, 2024
Reversed and remanded
Ross, Judge**

Ramsey County District Court
File No. 62-CV-22-5868

Benjamin L. Weiss, Southern Minnesota Regional Legal Services, Inc., St. Paul, Minnesota (for appellant T.M.)

John J. Choi, Ramsey County Attorney, Jean Y. Park, Assistant County Attorney, St. Paul, Minnesota (for respondent Ramsey County Health and Wellness)

Keith Ellison, Attorney General, R.J. Detrick, Assistant Attorney General, St. Paul, Minnesota (for respondent Jodi Harpstead)

Interfaith Action of Greater Saint Paul, St. Paul, Minnesota (respondent)

Considered and decided by Ross, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Project Home, a government-contracted facility that provides temporary residential shelter to homeless individuals, removed T.M. after T.M.'s teenage daughter threatened to cut another resident with a knife. T.M. unsuccessfully appealed her removal to the department of human services, and a human-services judge affirmed. T.M. then appealed

the department's decision to the district court. T.M. obtained permanent housing while her appeal to the district court was pending, and the district court therefore dismissed the appeal as moot. T.M. appeals to this court, challenging the district court's dismissal. Because T.M.'s case meets an exception to the mootness doctrine by presenting a single issue that is functionally justiciable and has statewide importance, we reverse the dismissal and remand the case to the district court for further proceedings.

**FACTS**

T.M. and her two children, including her then-fifteen-year-old daughter, moved into the Project Home residential shelter in St. Paul in April 2022. Project Home discharged T.M.'s family from staying at the shelter, and the propriety of that discharge is the subject of the dispute that underlies this appeal.

Project Home is a homeless shelter that receives federal funding through its contractual relationship with Ramsey County. The shelter therefore is obligated to establish rules pertaining to the justification for and process of removing a resident. Project Home shelter staff advised T.M. of its rules when she entered the shelter. Relevant here, Project Home's rules prohibit residents from engaging in or threatening violence toward other residents, and they establish that a resident who violates the anti-violence rules will be discharged from the shelter within 24 hours. T.M.'s daughter violated the violence prohibition in May 2022 by threatening to cut another girl with a knife. Project Home notified T.M. that day that it was terminating her stay at the shelter.

The brevity of Project Home's pre-termination notification period is central to this dispute. The required period results from the layered, governmental oversight of Project

2

Home's operations. The United States Department of Housing and Urban Development (HUD) disburses funds to states through the Emergency Solutions Grant Program (ESG). The Minnesota Department of Human Services (DHS) is a recipient of these funds, and it disperses the ESG funds to subrecipient local agencies in the state, including the City of Saint Paul. Saint Paul in turn administers the funds under a joint-powers agreement with Ramsey County. Ramsey County contracts with respondent Interfaith Action of Greater Saint Paul, an entity that runs the Project Home shelter. Ramsey County's contract with Project Home provides that "[f]amilies will not be exited from emergency shelter until they attain longer-term stable housing placement." Entities receiving ESG funds are also subject to various federal laws, including the Americans with Disabilities Act (ADA) and the Fair Housing Act (FHA), and federal regulations, including one that requires entities to establish and submit to HUD written standards of shelter discharge.

The regulations limit a recipient's or subrecipient's decision to terminate assistance. Relevant here, before discharging a program participant, "[t]he recipient or subrecipient must exercise judgment and examine all extenuating circumstances in determining when violations warrant termination so that a program participant's assistance is terminated only in the most severe cases." 24 C.F.R. § 576.402(a) (2024). If a recipient or subrecipient intends to discharge a participant for violating program requirements, it must do so through a formal, established process. *Id.* Ramsey County's formal process requires programs to afford program participants the opportunity for administrative review of the decision to be considered by "a person other than the person (or a subordinate of that person) who made or approved the termination decision."

3

T.M. sent a letter electronically to Project Home in June 2022 asking to be readmitted into the shelter. She framed her request as one seeking a reasonable accommodation under the ADA and the FHA. She said that her daughter had "a record of mental impairments, diagnosed initially as generalized anxiety disorder and later as major depression." She asserted that her daughter's threatening outburst arose from those conditions and from the fact that T.M. had been unable to obtain mental-health services for her daughter. T.M. asked to be readmitted into the shelter conditioned on her daughter resuming treatment. The shelter and county denied her readmission request.

A human-services judge (HSJ) conducted an evidentiary hearing on the propriety of T.M.'s removal from the shelter. The HSJ made findings of fact that supported the removal. The HSJ found that, because T.M. had informed Project Home intake staff that no family member had mental-health issues, staff did not inform her that she had a right to request an ADA accommodation. He also found that T.M.'s daughter did not have mental-health conditions. And he found that T.M.'s daughter threatened the other girl, violating the zero-tolerance policy.

T.M. raised her challenge to the Minnesota Department of Human Services Commissioner by moving for reconsideration. T.M. made four arguments premised on the idea that, as a recipient of federal ESG funding, the shelter was subject to the rules for shelter discharge found in a federal regulation:

> If a program participant violates program requirements, the recipient or subrecipient may terminate the assistance in accordance with a formal process established by the recipient or subrecipient that recognizes the rights of individuals affected. The recipient or subrecipient must exercise judgment

4

and examine all extenuating circumstances in determining when violations warrant termination so that a program participant's assistance is terminated only in the most severe cases.

24 C.F.R. § 576.402(a). Relying on that regulation, T.M. maintained first that the shelter had a duty to inquire whether any "extenuating circumstances," such as her daughter's mental-health disorders, played a role in the rule violation. T.M. argued second that the county failed to follow its own policies for discharge because it failed to notify her of her right to administrative review. T.M. argued third that she was not provided adequate notice of the termination under a county policy. T.M. argued fourth that, as an ESG-fund recipient, Project Home was subject to but violated the ADA and FHA by denying T.M.'s request for an accommodation on behalf of her daughter. The commissioner denied T.M.'s motion for reconsideration because the evidence did not show that her daughter had a disability and because the DHS is "not the appropriate forum for the ADA enforcement remedies."

T.M. then appealed the commissioner's decision denying her motion to reconsider to the district court, raising four questions:

> 1. Does 24 C.F.R. § 576.402(a), require a shelter that receives funding from the federal Emergency Solutions Grant (ESG) to make an affirmative inquiry into any extenuating circumstances that may apply before terminating shelter?
>
> 2. Is Project Home required to provide an opportunity for an internal grievance, and notice of such opportunity, to residents it seeks to evict?
>
> 3. Is Project Home required to provide notice to residents of the right and process to request a disability accommodation under the Americans with Disabilities Act (ADA) and related statutes?

4. Does Respondent Minnesota Department of Human Services (DHS) have authority to refuse to decide whether an agency's action violates the Americans with Disabilities Act and related statutes, when raised by an appellant as a basis for disputing that action?

The district court did not address the merits of T.M.'s arguments and dismissed the case as moot after it received notice that T.M. and her family became permanently housed elsewhere.

T.M. appeals.

## DECISION

T.M. correctly concedes that her challenge to Project Home's decision to terminate her stay at the shelter is moot. Courts may ordinarily exercise jurisdiction only over justiciable controversies, *In re Guardianship of Tschumy*, 853 N.W.2d 728, 733–34 (Minn. 2014), and a moot case is not justiciable, *Snell v. Walz*, 985 N.W.2d 277, 283 (Minn. 2023). But exceptions exist. A case that is "technically moot" may yet be justiciable if "the harm to the plaintiff is capable of repetition yet evading review," or if the case is "functionally justiciable" and presents an important matter of "statewide significance" requiring an immediate decision. *Snell*, 985 N.W.2d at 284 (quotations omitted). Whether a mootness exception applies is a question of law we review *de novo*. *Id.* at 283. For the following reasons, we conclude that the important-matter-of-statewide-significance mootness exception applies to the sole question of whether DHS improperly concluded that it lacked authority to consider whether its actions violated the ADA or the federal regulations.

*Capable of Repetition Yet Evading Review*

T.M. unconvincingly argues that the capable-of-repetition exception applies. To succeed on this theory, T.M. needed to establish that a reasonable expectation exists that she would be subjected to the same allegedly improper action again and that "the duration of the challenged action is too short to be fully litigated." *Id.* at 287 (quotation omitted). But T.M. failed to establish that it is reasonably expected that she will be housed at Project Home again. Project Home provides shelter to "families with minor children" and T.M.'s youngest child is about seventeen years old. For the allegedly improper termination to occur again, T.M. would need to lose her present housing, seek and obtain housing specifically at Project Home rather than other housing options, engage in an allegedly terminable violation, and be removed from Project Home without a sufficient notice period, all within about one year. The likelihood of the contingent events occurring seems highly speculative, not reasonably expected. The circumstances do not meet the capable-of-repetition exception to mootness.

*Functionally Justiciable Issue of Statewide Importance*

But one issue in the case is a functionally justiciable matter of statewide importance. T.M. argues that three issues fit the exception: (1) whether federal regulations required Project Home to ask about any extenuating circumstances before removing T.M.; (2) whether Project Home was required to give residents notice of the right to request a disability accommodation; and (3) whether DHS had the authority to decline to consider T.M.'s argument that its actions violated federal guidelines and procedures. The first two issues are necessarily local in nature, involving one shelter in one city. At oral argument,

7

counsel for T.M. acknowledged that the record does not indicate that other shelters elsewhere receive ESG funding but fail to abide by regulatory requirements. Those issues are clearly dissimilar to issues in cases having statewide significance. For example, the supreme court recognized that the question of whether a breath analyzer for testing alcohol concentration used by all state police agencies had been properly approved by the commissioner of public safety was a matter of statewide importance. *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 439 (Minn. 2002). It likewise recognized that the question of whether a defendant accused of criminal sexual conduct can compel the testimony of an alleged child victim at the defendant's omnibus hearing was a matter of statewide importance. *State v. Rud*, 359 N.W.2d 573, 576 (Minn. 1984). Only T.M.'s third stated issue is similarly a matter of importance throughout the state, in that it affects DHS review of removal challenges originating from any shelter in the department's statewide jurisdiction.

That statewide issue is also functionally justiciable. An issue is functionally justiciable if the record and the parties' arguments are so developed that a court could effectively decide the case. *See Dean v. City of Winona*, 868 N.W.2d 1, 6 (Minn. 2015). The question of whether the department had the authority to refuse to consider T.M.'s challenge based on federal regulations is functionally justiciable because the record contains the entire administrative file, the question presented is purely legal in nature as it turns largely on statutory analysis, and the parties briefed the issue adequately. This question meets an exception to the mootness doctrine.

*District Court Standard of Review*

T.M. contends relatedly that the district court erroneously concluded that its standard of review is bound by deference to the department and that its scope of review was limited to deciding only the issue the department decided, which was whether T.M.'s daughter violated Project Home's zero-tolerance policy. The district court has the authority to consider whether the agency's decision was made under an unlawful procedure or was affected by an error of law. Minn. Stat. § 14.69(c), (d) (2022). When a party alleges that the department made a procedural or legal error, courts are not bound by the department's decision, and they instead review the issue *de novo*. *See In re Schmalz*, 945 N.W.2d 46, 50 (Minn. 2020) (error of law); *In re Kind Heart Daycare, Inc. v. Comm'r of Hum. Servs.*, 905 N.W.2d 1, 9 (Minn. 2017) (unlawful procedure). The appropriate standard of review for the legal question left on appeal is therefore *de novo*.

We reverse the district court's mootness decision for the reasons stated, and we remand the case for further proceedings.

**Reversed and remanded.**